## ELECTRIC IMP. CO. *v.* CITY AND COUNTY OF SAN FRANCISCO.

*(Circuit Court, N. D. California.  March 30, 1891.)*

CONSTITUTIONAL LAW—POLICE POWER.

Where the evidence shows that the stretching of electric wires over and upon the roofs of buildings is extremely dangerous, both as being liable to originate fires and as obstructions to the extinguishment of fires otherwise originated, a city ordinance absolutely prohibiting the practice is a valid exercise of the police power.

On Motion for Injunction.

An ordinance of the board of supervisors of San Francisco, January 25, 1890, was as follows:

"Order No. 2163. Prohibiting the suspension of electric wires over or upon the roofs of buildings, etc.  The people of the city and county of San Francisco do ordain as follows:

"Section 1. It shall be unlawful for any person, company, or corporation to run or suspend or stretch over or across or upon the top or roof, or any portion of the top or roof, of any building in the city and county of San Francisco, any wire used for the purpose of conducting electricity, or an electric current, or for any purpose whatsoever.

"Sec. 2. It shall be unlawful for any person, company, or corporation to keep or maintain over or across or upon the top or roof, or any portion of the top or roof, of any building in the city and county of San Francisco, any wire used for the purpose of conducting electricity or an electric current, or for any purpose whatsoever, for more than ten days after such person, company, or corporation shall have received notice in writing, signed by the chief engineer of the fire department of said city and county, to remove the same; and each and every day subsequent to the ten days after such prescribed notice shall have been given, any maintenance or keeping of any wires hereinabove prohibited shall constitute a new and separate violation of this ordinance.

"Sec. 3. It shall be unlawful for any person, company, or corporation to attach to or suspend from or support upon any building in the city and county of San Francisco any wire used for the purpose of conducting electricity, unless the same be attached, suspended, or supported for the purpose of supplying to the owner or the occupant of such building, or to the owner or occupant of some part thereof, electric light or electric power, or telephone or telegraph service.

"Sec. 4. It shall be unlawful for any person, company, or corporation to run or suspend or stretch, or keep or maintain, upon any pole or other support erected in or upon the streets, or in or upon any street, in the city and county of San Francisco, any electric light wire, or any wire used to conduct electricity, or an electric current, for the purpose of producing electric light or motive power, unless such person, company, or corporation shall have heretofore obtained, or shall hereafter obtain, permission of the board of supervisors of said city and county so to do.

"Sec. 5. The provisions of this ordinance shall not apply to any building occupied in his or its business, by any person, company, or corporation engaged in selling or furnishing or supplying electric lights or electric power, or engaged in conducting or carrying on a telephone or telegraph business; nor shall they apply to any wire erected and used exclusively for fire alarm and city and county purposes.

"Sec. 6. Any person violating any provision of this ordinance shall be guilty

of a misdemeanor, and shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not more than six months, or by both fine and imprisonment.

"Sec. 7. If any person, who has heretofore run or suspended or stretched, or who shall hereafter run or suspend or stretch, over or across or upon the top or roof, or any portion of the top or roof, of any building in the city and county of San Francisco, or who shall hereafter keep or maintain any such wire over or across or upon the top or roof, or any portion of the top or roof, of any building, in said city and county, shall fail to remove the same within ten days after the receipt of written notice to do so, signed by the chief engineer of the fire department of said city and county, then it shall be lawful for the said chief engineer of the fire department, and he is hereby authorized and directed, to cause such wire to be removed."

In attempted enforcement of such ordinance, the city and county of San Francisco, through David Scannell, chief engineer of its fire department, notified complainant to remove its wires suspended on numerous buildings in violation of the ordinance, under pain of prosecution. Whereupon complainant immediately sought the protection of the court against such interference with its business by bringing these suits, and it now asks for injunctions pending the hearing of the suits which it has instituted against said city and county, and against said David Scannell, the chief engineer of the fire department of said city and county, to restrain it and him from enforcing, or proceeding under, such ordinance.

*Haggin & Van Ness* and *George C. Gorham, Jr.*, for complainant.

*Langhorne & Miller* and *Estee, Wilson & McCutcheon*, for respondent.

Before SAWYER, Circuit Judge.

SAWYER, J. Without discussing the question at large, I shall content myself with a brief announcement of my conclusions in this case. After a careful consideration of the questions involved, I am satisfied that "Ordinance No. 2163. Prohibiting the suspension of electric wires over, or upon the roofs of buildings," etc., is a valid ordinance, passed within the legitimate police powers of the city, under the authority of the state. In *Bartemeyer* v. *Iowa*, 18 Wall. 138, Mr. Justice FIELD says, that the dissenting judges in the *Slaughter-House Cases*, "recognized the power of the state in its fullest extent, [the police power,] observing that it embraced all regulations affecting the health, good order, morals, peace and *safety of society*, and that all sorts of restrictions and burdens were imposed under it; and that when these were not in conflict with any constitutional prohibition, or fundamental principles, they could not be successfully assailed in a judicial tribunal." So, in *Butchers' Union, etc., Co.* v. *Crescent City, etc., Co.*, 111 U. S. 747, 4 Sup. Ct. Rep. 652, the court, quoting from Chancellor Kent, says:

"Unwholesome trades, slaughter-houses, operations offensive to the senses, *the deposit of powder*, the application of steam-power to propel cars, the *building of combustible materials*, and the burial of the dead, may all be interdicted by the law in the midst of dense population, on the general and rational principle that every person ought to so use his property as not to injure his neighbors; *and that private interests must be made subservient to the general interests of the community.*"

In *Barbier* v. *Connolly*, 113 U. S. 27, 5 Sup. Ct. Rep. 357, and *Soon Hing* v. *Crowley*, 113 U. S. 703, 5 Sup. Ct. Rep. 730, the court distinctly hold, upon a much milder case of danger than this, *that the fourteenth amendment in no respect interferes with, or limits the exercise of this police power.* The exercise of no other branch of this power is more important, than that, which protects, or seeks to protect, the public safety of a great city, like San Francisco. That the stretching of these wires over buildings in the manner practiced, as shown by the evidence, no one, I think can doubt after reading the affidavits, is extremely dangerous, both as being liable to originate fires, and as obstructions to the extinguishment of fires otherwise originated. Indeed, the danger is a matter of common knowledge. We might almost as well require strict proof of the danger of storing gunpowder, or dynamite, in, under, upon, or about our houses. Even if these wires can be so put up and insulated as to be safe, in the mode suggested by one of complainant's witnesses, Prof. Kieth, it has not been done. The professor himself does not claim that they are, now, safe. The danger is of a character cognate to that of gunpowder. There is, doubtless, a difference in the degree of the danger, but, the consequences are liable to be far more widespread and calamitous. Should a raging fire occur, originated by the electric current, or otherwise, these dangerous wires might so obstruct the efforts of the firemen to extinguish it, as to result in the destruction of the entire city. It is, certainly, competent under the police powers of the state, to suppress such dangerous erections, in the interest of the common safety of the community. Who can say, in view of the constant, and perpetual menace, that the provisions of this ordinance are unreasonable? Is it unreasonable because the remedy against the great public and private nuisance is prompt, and efficient, when no other remedy is certain to be equally so? We know not how soon a calamity from this source may come upon us. It may be while we are litigating the question. If one should store a large quantity of gunpowder or dynamite among the buildings in the midst of the city, would a like remedy be deemed unreasonable, or inadmissible, or void, as not being due process of law? The fact, is, the gunpowder has no right to be there. It is a standing and dangerous menace to the neighborhood, which any one affected by the nuisance has a right to abate. And when it is so extended as to become a public menace and nuisance, the public officers, especially, when specifically authorized to do so, can lawfully abate it. And such a constant and continuous menace and nuisance, in a less degree perhaps, it is manifest, these wires erected as they appear to be, are. They have no more right to be there than gunpowder. The only wonder is that owners of buildings in view of the recognized danger will permit their use for such purposes. True, the supervisors cannot make an article dangerous, by simply declaring it to be so, when, in fact, it is not. But the practice, as it now prevails, against which this ordinance is directed, is shown to be dangerous, and, we, ourselves, all know it to be so. There can be no successful disputing of the fact. The order is general and applicable to all. If it is not enforced as to all, it ought to be, and the chief

of police declares his purpose to enforce it, in all cases, that come to his notice. I see no good reason to believe, that it was passed for the purpose of discrimination in favor of another company, as claimed, or that it is intended to be so enforced. I do not think it violates any provision of the national constitution. I regret to be obliged, by this decision, to affect, so seriously, the interests of the enterprising parties, who are endeavoring to supply our citizens with electricity for the various purposes to which it is now applied. But I cannot decline to administer the law as I find it, for the safety and security of the lives and property of the citizens of San Francisco. In accordance with the conclusions, which I have reached, an injunction must be denied, and it is so ordered.

On Motion for Injunction.
*Haggin & Van Ness* and *George C. Gorham, Jr.*, for complainant.
*Langhorne & Miller* and *Estee, Wilson & McCutcheon*, for respondent.
Before SAWYER, Circuit Judge.