(No. 11054.)

JOHN W. YEADON, Appellant, *vs.* WALLACE G. CLARK *et al.*
Appellees.

*Opinion filed December 21, 1916—Rehearing denied Feb. 9, 1917.*

1. SANITARY DISTRICTS—*authority to sell electrical power can not be conferred on Sanitary District of Chicago except by an act of the General Assembly.* Authority to develop and sell electrical power cannot be conferred upon the Sanitary District of Chicago merely because the exercise of such power will be beneficial to the city of Chicago and other municipalities in enabling them to secure electrical power at cost and will also benefit various industries, but such authority, if it exists, must be found in some act of the General Assembly.

2. SAME—*the Sanitary District of Chicago may dispose of water power incidentally created by construction of its drainage canal.* By section 7 of the act creating the Sanitary District of Chicago that corporation has authority to dispose of water power incidentally created by the construction of its drainage channel and may sell such power for commercial or municipal purposes.

3. SAME—*when the Sanitary District of Chicago is without authority to take a lease of water power.* Increased water power at dam No. 1 of the Illinois and Michigan canal, caused by turning the waters of the Sanitary District of Chicago into a basin above the dam, is not water power incidentally created by construction of the drainage canal within the meaning of section 7 of the act creating the sanitary district, and said district is without authority to take a lease of said water power from the canal commissioners for the purpose of developing and selling electrical power.

4. SAME—*section 5 of act enlarging powers of Sanitary District of Chicago is limited to channel north of upper basin of the Illinois and Michigan canal.* Section 5 of the act of 1903, enlarging the powers of the Sanitary District of Chicago regarding the development of water power by the construction of dams, water wheels and other works, is limited to the channel north of the upper basin of the Illinois and Michigan canal, and shows the legislative understanding that the basin is the property of the canal.

5. MUNICIPAL CORPORATIONS—*what powers may be beneficially exercised by a municipal corporation is for the legislature.* The question what powers may properly be exercised by a municipal corporation and what public benefit will justify the conferring of such power is for the General Assembly and not for the courts, and the powers of such corporations are derived from legislative grants.

6. CONSTRUCTION—*purpose of construing a statute is to ascertain legislative intent.* The purpose of construing a statute is to ascertain the legislative intent and when the intent is ascertained to give it effect if not in violation of the constitution, and when a statute is susceptible of more than one construction the court will give it such construction as will effect the legislative purpose rather than one that will defeat it.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM F. COOPER, Judge, presiding.

EARL J. SMITH, and COLIN C. H. FYFFE, for appellant.

EDMUND D. ADCOCK, (LEO SPITZ, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The canal commissioners in charge of the Illinois and Michigan canal leased the water power created by dam No. 1 in Joliet for a term of twenty years from July 17, 1856. The lease was renewed twice for like periods, and after September 1, 1890, was owned by the Economy Light and Power Company of Chicago. On June 17, 1916, the commissioners advertised for bids for the water power for a period of twenty years from July 17, 1916, when the lease of the Economy Light and Power Company would end. There were only two bids, and they were opened on July 17, 1916,—one being by Andrew J. Cooke of $3 per horse power per annum, and the other by the Sanitary District of Chicago of $15.01 per horse power per annum. The bid of the sanitary district was accepted and the canal commissioners and district were about to execute a lease and the district to furnish a bond in the sum of $300,000 for the performance of the terms of the lease, when the appellant, John W. Yeadon, a citizen, voter and tax-payer of the city of Chicago, filed his bill in this case in the superior

court of Cook county alleging a want of authority in the sanitary district to execute the lease and expend money in the installment of water wheels, electrical apparatus and other works and praying for an injunction to prevent the district from doing so. The canal commissioners filed what was called a petition and answer, alleging that the maximum rental received for the power until 1900 was $1200 per annum; that on account of the increased flow of water from the sanitary district they were receiving $10,457 per annum; that by accepting the bid of the sanitary district they would receive $105,000 per annum, or about $2,100,-000 for the term of the lease, and that unless they could lease the power to the sanitary district there was no hope of securing any greater sum than the bid of Andrew J. Cooke of $3 per horse power per annum, yielding but a small sum of money. The answer of the sanitary district admitted the facts alleged in the bill and its intention to install water wheels and other works, at a cost of approximately $600,000, to develop the water power for the purpose of generating electricity. It denied that the sole purpose of acquiring the lease was to engage in the business of generating and selling electrical power, and averred that the power was necessary for the proper operation of the plant of the district to fully develop the power incidentally created by the operation of the main channel. It alleged that the district already maintained a plant whereby electricity was furnished for 25,000 street lights in Chicago, 1000 street lights in other municipalities and lights for 3800 acres of public parks in Chicago, besides electrical power for various industries, and that by leasing the power at dam No. 1 it would be enabled to supply Chicago and other municipalities with street lights at cost and to furnish power for commercial purposes. The chancellor heard the evidence and entered a decree dismissing the bill, and the State of Illinois being interested in the subject matter of the suit, an appeal to this court was allowed and perfected.

The Illinois and Michigan canal was constructed from the west fork of the south branch of the Chicago river at Chicago to a connection with the Illinois river at Utica. The canal entered the channel of the Desplaines river near the northern limits of the city of Joliet and followed the channel of the river through the city. At Bridge street, about half a mile south of the point where the canal joined the river, the dam in question was erected and formed what was called the upper basin of the canal, along which an embankment extending a considerable distance up-stream was built and maintained as a part of the canal. The sanitary district constructed its drainage channel from Chicago to a junction with the Desplaines river and the canal, near the north end of the upper basin, so that there was a confluence of the waters of the canal, river and drainage channel. The sanitary district passed an ordinance adopting as the right of way for its channel the same route through the city of Joliet to Brandon road, south of the city, appropriated property therefor, excavated its channel and improved that part of the river and canal south of the north end of the upper basin in order to accommodate the increased flow of water. There was a controversy between the canal commissioners and the sanitary district, and the canal commissioners brought a suit in the circuit court of Will county against the district, which terminated in a decree in 1898 entered by consent. That decree found that the canal embraced substantially the bed and banks of the Desplaines river constituting the upper basin terminated by dam No. 1, which had been constructed by the canal authorities; that the sanitary district had no power or authority to injure or destroy water power rights existing at the time it was created, and that the discharge of water from the drainage channel had increased the flow from 40,000 cubic feet per minute to at least 300,000 cubic feet per minute and thereby increased the power at the dam. The sanitary district was granted the right to use and occupy certain tracts of land and to en-

ter the upper basin with its channel, and it was required to re-build the ancient structures at the dam and improve the works and pay the canal commissioners $20,000 for its easement. Before the drainage channel was made there was comparatively little water either in the canal or river and in times of drouth scarcely any. The upper basin was filled up with sludge, so that it was insufficient to carry the water discharged by the drainage district, and the district dredged a channel of the necessary capacity.

The only question to be determined is whether the General Assembly has conferred power upon the sanitary district to lease the water power created by dam No. 1, and engage, as a part of its business, in generating and disposing of electrical power. It was proved that the exercise of the power would be beneficial to the city of Chicago and other municipalities in enabling them to secure electrical power at cost and would also benefit various industries, but that fact could not operate to confer authority upon the district. The question what powers may properly be exercised by a municipal corporation and what public benefit would justify the conferring of power is for the General Assembly and not for the courts, and the powers of such corporations are derived from legislative grants. The authority must be found in some act of the General Assembly or it does not exist. (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; *City of Marengo* v. *Rowland,* 263 id. 531; *People* v. *Village of Oak Park,* 268 id. 256.) Counsel differ as to whether the construction of the constitutional provision should be strict or liberal, but the rule declared by this court is that the purpose of construing a statute is to ascertain the legislative intent and when the intent is ascertained to give it effect if not in violation of the constitution, and when a statute is susceptible of more than one construction the court will give such construction as will effect the legislative purpose rather than one that will defeat it. (*People* v. *Hinrichsen,* 161 Ill. 223; *People* v. *Price,* 257

id. 587.)  That is the rule applicable to this case.  The sanitary district was created by an act in force July 1, 1889. (Laws of 1889, p. 126.)  Section 7 of the act provides that the board of trustees shall have power to provide for the drainage of the district by laying out, establishing, constructing and maintaining channels, drains, ditches and outlets for carrying off and disposing of drainage, "and also to control and dispose of any water power which may be incidentally created in the construction and use of said channels or outlets."  The district, therefore, has authority to dispose of water power incidentally created by the construction of its drainage channel and may sell such power for commercial or municipal purposes.  But the power at dam No. 1 was not incidentally created by the works of the district.  The proposal to take a lease of the power from the canal commissioners and pay rental of $15.01 per horse power annually was an acknowledgment of the title of the canal commissioners to the power leased which the lessee could not dispute.  The increased flow of water from the channel of the district by turning the water into the upper basin half a mile above increased the water power at the dam, which was a benefit to the canal commissioners, but it was not power of the district incidentally created by the construction of its channel and did not differ from increased power at any point below, in the Desplaines river or elsewhere.  In 1903 the powers of the sanitary district were enlarged by an act in force July 1, 1903.  (Laws of 1903, p. 113.)  Section 5 of that act is as follows:  "That the said Sanitary District of Chicago is hereby authorized to construct all such dams, water wheels and other works north of the upper basin of the Illinois and Michigan canal as may be necessary or appropriate to develop and render available the power arising from the water passing through its main channel and any auxiliary channels now, or hereafter, constructed by said district."  The authority given by that act was by its terms limited to the channel north of the upper

basin of the Illinois and Michigan canal and shows the legislative understanding that the basin is the property of the Illinois and Michigan canal, although the sanitary district has rights in it recognized by the canal commissioners and provided for in the consent decree.

We have recited the only statutory provisions relied upon as giving authority to enter into the lease, and neither of them is operative to confer such power. Whether it ought to be conferred is for the General Assembly.

The decree is reversed and the cause is remanded, with directions to grant the relief prayed for.

*Reversed and remanded, with directions.*