---

(No. 16153.—Reversed and remanded.)
HARRY ARMS *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 28, 1924—Rehearing denied Dec. 5, 1924.*

1. MUNICIPAL CORPORATIONS—*legislative power of cities must be derived from statute.* Municipal corporations derive their existence and their powers solely from the General Assembly, and in order to legislate upon or with reference to a particular subject or occupation they must be able to point out the statute which gives them authority to do so.

2. SAME—*statutes granting powers to municipal corporations are strictly construed.* Statutes granting powers to municipal corporations are strictly construed, any fair or reasonable doubt being resolved against the exercise of the power, and implied powers are those necessarily incident to the powers expressly granted.

3. SAME—*power to license must be expressly granted or necessarily implied.*  As a city has no power, except by delegation from the General Assembly, to license any occupation or to require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the city's charter or necessarily implied in or incident to the power expressly delegated.

4. SAME—*enumeration of powers in section 1 of article 5 of the Cities and Villages act is exclusive.*  The express enumeration in the paragraphs of section 1 of article 5 of the Cities and Villages act of the occupations or businesses not nuisances *per se* over which cities are given control is an exclusion of all other occupations or businesses not mentioned.

5. SAME—*power may be derived from more than one paragraph of section 1 of article 5 of Cities and Villages act.*  A city may derive its power to legislate upon a given subject or with reference to a particular occupation from one item or from two or more items enumerated in the paragraphs of section 1 of article 5 of the Cities and Villages act.

6. SAME—*paragraph 4 of section 1 of article 5 of the Cities and Villages act, in regard to licenses, applies only to occupations enumerated.*  Paragraph 4 of section 1 of article 5 of the Cities and Villages act, giving cities power to regulate the issuing and revoking of licenses, does not delegate unlimited licensing power but has reference only to the subjects and occupations which by other specific paragraphs of the same section cities are given express power to license.

7. SAME—*cities are not given power to license and require fees of electricians.*  None of the paragraphs of section 1 of article 5 of the Cities and Villages act delegate to cities the authority to license electricians or to impose fees for inspecting electrical construction, nor is such authority given in the Factory Inspection law or any other statute, and an ordinance requiring such licenses and imposing such fees is void.

8. SAME—*paragraph 66 of section 1 of article 5 of Cities and Villages act does not delegate unlimited police power.*  Paragraph 66 of section 1 of article 5 of the Cities and Villages act, giving cities authority to regulate the police and to pass and enforce all necessary police ordinances, does not delegate the entire police power of the State, but under said paragraph police power may be exercised by cities only to make effective the powers expressly given.

9. SAME—*paragraph 100 of section 1 of article 5 of Cities and Villages act is limited to the powers expressly delegated.*  Paragraph 100 of section 1 of the Cities and Villages act

presupposes the grant of authority with reference to the particular subject or occupation which a city is authorized to regulate, and it merely authorizes the passage of ordinances and the making of rules and regulations to make such authority effective.

10. SAME—*what power should be delegated to cities is not question for courts.* The question of what powers should be delegated to a municipality is for the General Assembly and not for the courts, and in determining the validity of an ordinance the question is whether the legislature has, in fact, delegated to the city the power which it seeks to exercise, either in direct terms or as necessarily incident to some power expressly granted.

11. STATUTES—*general terms following an enumeration refer to the class enumerated.* General words of description in a statute following a specific enumeration are limited to things of the same class or nature as those specified.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

CHARLES P. SCHWARTZ, (WILLIAM E. McNAMARA, of counsel,) for appellants.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, of counsel,) for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Chapter 36 of the Chicago code of 1922 is entitled "Department of Gas and Electricity." Article 1 of that chapter, consisting of sections 1623 to 1630, inclusive, creates the department, and among other things provides for the appointment of a commissioner of gas and electricity and other administrative officers and defines their powers and duties. The second article of the same chapter consists of sections 1631 to 1641, inclusive, and its subject is electrical installation. Section 1631 prohibits the use of electric current for lighting, heating or power purposes except in compliance with the ordinance. Section 1632 prohibits the installation of wires or other electrical apparatus unless a permit shall have been obtained therefor and the work is

done under the supervision of a licensed electrician. By section 1633 provision is made for the appointment of an examining board of five members to ascertain the qualifications of applicants for licenses. Each such applicant is required (1) to be at least twenty-one years of age; (2) to have a thorough knowledge of electrical construction; (3) to have had not less than four years' practical experience in the class of work mentioned in the application; (4) to pass the examination prescribed by the board; (5) to have his application endorsed by two responsible citizens to the effect that he possesses the requisite qualifications; (6) to deposit with the examining board the license fee fixed for the particular class of work; and (7) to file with the city collector an indemnifying bond, with good and sufficient sureties, in the penal sum of $5000. Licenses are classified and the fees therefor fixed as follows:

| Class. | Fee first year. | Fee each succeeding year. |
|---|---|---|
| General electrical contractor..... | $200 | $50 |
| Electrical construction.......... | 100 | 25 |
| Fixture license ................. | 100 | 25 |
| Sign license .................... | 25 | 10 |
| Maintenance license............. | 25 | 10 |

Licenses are renewed only within the respective classifications for which they were originally issued. To transfer to another classification the applicant is required to pass another examination to determine his qualifications to act in the particular class to which he desires to be transferred. The examining board is given the power to adopt necessary rules and regulations, and its judgment whether or not an applicant is qualified is made final. Upon complaint the board may summon a licensee to appear before it for examination, and if it should find that he is not qualified to do the work for which he has been licensed, or that he has not complied with the ordinances of the city or the rules and regulations of the department, the board is re-

quired to certify the facts to the commissioner of gas and electricity, with a recommendation for the suspension or revocation of his license, as the board in its judgment shall deem advisable. The commissioner may suspend for a period not exceeding thirty days, and the mayor may revoke, a license.

Section 1634 empowers the commissioner of gas and electricity, and his assistants, to inspect all electrical installation prior to and after its completion, and they are given for that purpose the right to enter any building and to remove any existing obstructions, such as laths, plastering or partitions. No person is permitted to interfere with them in the performance of their duties. If the work proves to have been done in a safe and secure manner, after payment of the inspection fee the commissioner is required to issue a certificate of inspection. The use of electric current in the absence of such a certificate is made unlawful, except that the commissioner may issue temporary permits for such use during the construction or alteration of buildings. Section 1635 empowers the commissioner of gas and electricity to inspect and re-inspect all wires and apparatus which conduct electric current for light, heat or power, and when they are found to be unsafe to life or property, to notify the owner to put them in safe and secure condition within forty-eight hours. A penalty is provided for failure to comply. The commissioner is authorized to call upon the police department for assistance, and every member of that department is obliged to perform the duties required by the commissioner to make effective the ordinance, rules and regulations relating to electrical installation. Section 1637 requires the registered electrician to pay, prior to the issuance of any permit to do electrical work, various inspection fees, which are set forth at considerable length. The minimum fee is fixed at one dollar. By section 1638 no alterations are permitted in any electrical installation without the inspection required for new work. The provisions of

sections 1636, 1639 and 1640 are not material to the determination of the question here involved. Section 1641 prescribes penalties for violations of the second article.

Harry Arms and one hundred and twelve master electricians and electrical contractors filed their bill of complaint in the circuit court of Cook county to enjoin the city of Chicago and certain of its officers from enforcing the above mentioned ordinance. A motion for a preliminary injunction was made and denied and the bill dismissed for want of equity. The chancellor certified that the validity of an ordinance was involved and allowed an appeal to this court.

The constitution vests the legislative power of the State in a General Assembly. That body may exercise the power directly or it may create municipalities and delegate to them, for purposes of local government, such portion of the power as it sees fit to grant. Any power so delegated may be taken from the municipalities by the General Assembly at its pleasure. Municipal corporations derive their existence and their powers solely from the General Assembly. They have no inherent power. In order to legislate upon or with reference to a particular subject or occupation they must be able to point out the statute which gives them the authority to do so. Statutes which grant powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of such powers is resolved against the municipality which claims the right to exercise them. The implied powers which a municipal corporation possesses and can exercise are those necessarily incident to the powers expressly granted. Since a city has no power, except by delegation from the General Assembly, to license any occupation or to require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the city's charter or necessarily implied in or incident to the power expressly delegated. (*Wilkie* v. *City of Chicago,* 188 Ill. 444; *City of Chicago* v. *M. & M. Hotel Co.* 248

314—21

id. 264; *City of Chicago* v. *Ross,* 257 id. 76; *People* v. *City of Chicago,* 261 id. 16; *City of Chicago* v. *Mandel Bros.* 264 id. 206; *City of Chicago* v. *Pettibone & Co.* 267 id. 573; *Condon* v. *Village of Forest Park,* 278 id. 218; *Potson* v. *City of Chicago,* 304 id. 222.) Section 1 of article 5 of the Cities and Villages act (Cahill's Stat. 1923, p. 413,) provides that the city council in cities shall have the powers specified in its one hundred sub-sections. The express enumeration in that section of the occupations or businesses not nuisances *per se* over which the city is given control is the exclusion of all other occupations or businesses. (*People* v. *City of Chicago, supra; Potson* v. *City of Chicago, supra.*) A city may derive its power to legislate upon a given subject or with reference to a particular occupation from one item or from two or more items of the enumeration, but the power must be expressly delegated or necessarily implied from the power expressly conferred. *Gundling* v. *City of Chicago,* 176 Ill. 340; *Spiegler* v. *City of Chicago,* 216 id. 114; *Goodrich* v. *Busse,* 247 id. 366; *Potson* v. *City of Chicago, supra; Consumers Co.* v. *City of Chicago,* 313 Ill. 408.

The city claims that the power to pass the ordinance in question and to license electricians and electrical work in buildings is derived from the following sub-sections of section 1 of article 5 of the Cities and Villages act:

"Fourth—To fix the amount, terms and manner of issuing and revoking licenses."

"Sixty-first—To prescribe the thickness, strength, and manner of constructing stone, brick and other buildings and construction of fire-escapes thereon."

"Sixty-third—To prevent the dangerous construction and condition of chimneys, fireplaces, hearths, stoves, stovepipes, ovens, boilers, and apparatus used in and about any building and manufactory, and to cause the same to be removed or placed in a safe condition, when considered dangerous; to regulate and prevent the carrying on of manu-

factories dangerous in causing and promoting fires; * * * and to cause all such buildings and enclosures as may be in a dangerous state to be put in a safe condition."

"Sixty-fifth—To regulate and prevent * * * the use of lights in stables, shops, and other places."

"Sixty-sixth—To regulate the police of the city or village, and pass and enforce all necessary police ordinances."

"Seventy-fifth—To declare what shall be a nuisance, and to abate the same." * * *

"Seventy-eighth—To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

"Eighty-first—To direct the location and regulate the management and construction of packing houses, renderies, tallow chandleries, bone factories, soap factories, and tanneries, within the limits of the city." * * *

"Eighty-second—To direct the location and regulate the use and construction of breweries, distilleries." * * *

"Ninety-eighth—To establish and maintain electrical appliances in public buildings for fire and police protection * * * and * * * in privately owned buildings for fire and police protection upon application of the owner." * * *

"One-hundredth—To pass all ordinances, rules and make all regulations, proper or necessary, to carry into effect the powers granted." * * *

The fourth sub-section does not delegate unlimited licensing power. The authority to fix the amount, terms and manner of issuing and revoking licenses has reference to the subjects and occupations which by other specific sub-sections the city is given the express power to license. If this sub-section could be invoked to sustain the ordinance here involved, all the other provisions of the statute which expressly confer the power to license would be wholly unnecessary.

Sub-section 61 is limited to certain kinds and features of construction and is not broad enough to include electrical

work. Sub-section 63 confers the power to prevent the dangerous construction of the specific things there enumerated; to regulate and prevent the carrying on of manufactories dangerous in causing and promoting fires, and to cause the buildings and enclosures there defined which may be in a dangerous state to be put in a safe condition. Even if the power to regulate and prevent the carrying on of manufactories dangerous in causing and promoting fires includes the power to license such manufactories, yet the licensing power would necessarily be limited to manufactories of the character specified. The authority to regulate and prevent the use of lights in stables, shops and other places conferred by the sixty-fifth sub-section can by no known rule of construction be held to include the power to license here claimed. The power given by the eighty-first sub-section is to direct the location and regulate the management and construction of packing houses, renderies, tallow chandleries, bone factories, soap factories and tanneries. The power so conferred is not general but is limited to the particular businesses specified. The eighty-second sub-section can be invoked for no purpose, because it was held to be void in *People* v. *Kaul,* 302 Ill. 317. The authority to establish and maintain electrical appliances, granted by sub-section 98, is confined to public buildings for fire and police protection, and to privately owned buildings when application is made therefor. Each of these sub-sections is confined in its scope. General words of description in a statute following a specific enumeration are limited to things of the same class or nature as those specified. The express enumeration of certain subjects and occupations in the several sub-sections over which the city is given certain power or authority is by a well known canon of construction the exclusion of all other subjects and occupations. (*People* v. *City of Chicago, supra; Potson* v. *City of Chicago, supra.*) None of these sub-sections confer the power to license electricians or to exact fees for inspecting electrical construction work.

Authority is given by sub-section 66 to regulate the police and to pass and enforce all necessary police ordinances, but the entire police power of the State was not delegated to municipal corporations by this sub-section and it was not the intent of the legislature to confer unrestrained and unlimited police power upon them. (*People* v. *City of Chicago, supra.*) This power may be called into exercise to make effective the powers expressly given, but it is limited to that object and none other. *City of Chicago* v. *M. & M. Hotel Co. supra; City of Marion* v. *Criolo,* 278 Ill. 159; *Stoessand* v. *Frank,* 283 id. 271; *Moy* v. *City of Chicago,* 309 id. 242; *People* v. *City of Chicago, supra; Consumers Co.* v. *City of Chicago, supra.*

No relation, legally speaking, is perceived between the abatement of nuisances authorized by sub-section 75, or the doing of acts and the making of regulations necessary or expedient to promote health or to suppress disease permitted by sub-section 78, and the licensing of electricians and the imposition of fees for the inspection of electrical construction work. Sub-section 100, which confers the power to pass ordinances and make rules and regulations, is by the express terms of the sub-section limited to carrying into effect the powers granted. It presupposes the grant of authority with reference to the particular subject or occupation, and it merely authorizes the passage of ordinances and the making of rules and regulations to make such authority effective.

The question of what powers may be exercised by a municipality is for the General Assembly and not for the courts. (*Yeadon* v. *Clark,* 276 Ill. 424.) The question here is whether the legislature has, in fact, delegated to the city the power which it seeks to exercise, in direct terms or as necessarily incidental to some power expressly granted. The propriety of examining and licensing electricians we are not called upon to determine. It may be admitted that electricity is a dangerous agent, that fires often originate

from crossed wires and defective insulation, and that the regulation of electrical construction work and the licensing of electricians is not only salutary but necessary. Regulations of a similar character have been sustained in other jurisdictions. *Collins* v. *District of Columbia,* 30 App. Cas. 212; *Caven* v. *Coleman,* 96 S. W. (Tex.) 774; *Singer* v. *State,* 72 Md. 464; *Electric Improvement Co.* v. *City and County of San Franciso,* 45 Fed. 593; *City of Louisville* v. *Coulter,* 177 Ky. 242; *People* v. *Warden,* 144 N. Y. 529.

The Factory Inspection law of this State is limited to the inspection of wires and apparatus in factories and can not be invoked to sustain the ordinance in question here. The General Assembly has not granted to a city or village the power to license electricians or to impose fees for inspecting electrical construction work, hence the ordinance requiring such licenses and imposing such fees is void for want of authority to enact it.

The decree of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*