Harry Arms et al., Appellees, v. City of Chicago et al., Appellants.

Gen. No. 32,975.

Heard in the second division of this court for the first district at the April term, 1928. Opinion filed February 14, 1929. Rehearing denied February 27, 1929.

SAMUEL A. ETTELSON, Corporation Counsel, for appellants; LEON HORNSTEIN and RUTH C. NELSON, Assistant Corporation Counsel, of counsel.

CHARLES P. SCHWARTZ, for appellees; WILLIAM JAFFE. of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Several years ago Harry Arms and a number of other master electricians and electrical contractors filed a bill in the circuit court of Cook county to enjoin the City of Chicago and certain of its officers from enforcing an ordinance of the city providing for the licensing of electricians and electrical contractors, and prohibiting the installation of wires or other electrical apparatus unless the work be done under the supervision of a licensed electrician, etc. The motion for a preliminary injunction was denied and the bill dismissed for want of equity. The chancellor certified that the validity of an ordinance was involved and allowed an appeal to the Supreme Court. On October 28, 1924, the Supreme Court held the ordinance to be void, reversed the decree of the circuit court and remanded the cause. (*Arms v. City of Chicago,* 314 Ill. 316, 326.) After reinstatement, complainants, on April 30, 1925, filed an amended bill, the real purpose of which was to endeavor to secure the return of moneys paid by them (under duress or compulsion, as alleged) to the city by virtue of the ordinance which had been adjudged to be void. The essential prayer of this bill was "that defendants may be required to account to complainants as to any and all moneys paid as fees under the terms of said ordinance for licenses and/or permits to engage in the electrical business and/or do electrical work in said city." Defendants' special demurrer to the bill was overruled and they filed an answer. Thereafter complainants filed an amendment to the bill setting forth the respective sums claimed to have been paid by each of them to the city, as fees, aggregating $156,179.91. Thereafter defendants filed a plea to the

effect that these sums had been paid by complainants acting as agents of the parties that owned the buildings in which the work was done, and that complainants had been reimbursed for their outlays. This plea subsequently was withdrawn by defendants, and the point waived by them.

The cause came on for hearing before the chancellor in December, 1927, and the parties stipulated in open court that a trial be had upon the amended bill, as amended, and defendants' answer; that the cause be submitted to the court "upon *one* issue, namely, whether or not the payments alleged in the bill to have been made (the amount of which is stipulated to be $156,179.91) were *voluntarily* made, or made under circumstances which in equity and good conscience should require them to be repaid to complainants"; that no proof need be offered by either party, save this, that it is stipulated that, at the times the payments were made, the city officials "received the moneys in the belief that the ordinance, . . . which they had been attempting to enforce, with the various sections thereof, was valid"; that, "with the exception of the sole issue submitted to the court, as hereinbefore recited, all other *facts* alleged in the bill should be treated as proved, should the court find that complainants are entitled to recover a decree in this case"; and that "no question shall be raised as to the disbursement of the fund after the same was collected by the city."

The certificate of evidence discloses that, just before the stipulation was incorporated into the record, counsel for complainants said: "We contend that the *very existence* of this ordinance amounts to the payments made being *involuntary*. That is all there is to the bill." And, during the hearing, in referring to the one question to be decided, counsel for complainants stated it to be: "Whether or not the *existence* of this ordinance and payment under it was *tantamount to*

*duress* and obviated the necessity of protest.'' The court held with complainants, and on January 13, 1928, entered a decree that they recover back the several amounts, as stipulated to have been paid by them respectively to the city under the ordinance. From this decree defendants appealed to the Supreme Court, but on June 23, 1928, the cause was transferred to this Appellate Court. (*Arms v. City of Chicago*, 331 Ill. 56.) The Supreme Court said in the opinion (pp. 57–58): ''The question of the invalidity of the ordinance has been already adjudicated in this case. . . . The single question on the record is whether the facts shown established payment under duress. The payments involved do not relate to the revenue within the meaning of section 118 of the Practice Act, . . .''

A copy of the ordinance was attached to the amended bill and made a part thereof. The provisions of most of its sections are outlined in the opinion in *Arms v. City of Chicago*, 314 Ill. 316, to which reference is made. Section 1641 of Article II of the ordinance, referring to ''Electrical Installations,'' is as follows:

''1641. Penalty. Any person, firm or corporation that shall violate any of the provisions of this article, or that shall furnish or use any electrical current or install any electrical wires or apparatus within the city, in violation of any of the provisions of this article, shall be fined not less than fifty dollars nor more than one hundred dollars for each offense, and each day's use thereof contrary to the provisions of this article shall constitute and be a separate and distinct offense. Said commissioner of gas and electricity *may*, for any violation of or failure to comply with the provisions of this article, also order and compel the cutting off and stopping of such current until the provisions of this article are fully complied with.''

It is alleged in the amended bill that complainants and each of them have been for a long time and now

are electricians, engaged in the business of (1) con-
tracting for the installation and equipment, and (2) in-
stalling and equipping buildings of all sorts with
electrical wires and apparatus for electric lighting
purposes in the City of Chicago, and their supervision;
that they have no other means of subsistence or occu-
pation; that they and each of them have from time to
time "been compelled," in order to follow their trade
and do electrical work in said city, to pay, and have
paid, various sums of money in license fees to the
city; that they have made such payments "involunta-
rily" and "only because compelled by said ordinance
and the defendant officers of the city," who were
charged with the duty of enforcing the ordinance and
"compelling" the payment of fees by complainants;
that the defendant officers had no discretion under the
ordinance to waive any of the requirements thereof;
that "while *in many instances* complainants made
formal protest" against the execution of the fees,
"said protests were of no avail and useless"; and that
complainants and each of them are entitled to recover
back any and all fees paid under the ordinance, and
to have an accounting for payments made during the
years 1920 to 1924, inclusive. It will be noticed that
the charges that the payments of fees were made in-
voluntarily, or by compulsion, are mere conclusions.
No *facts* are stated, save that the ordinance was in
existence, showing wherein there was any compulsion
or duress. It will also be noticed that complainants
do not allege that in all instances they made protests
against the payment of the fees, but it is alleged that
protests "were of no avail and useless." It is further
alleged that defendants "threaten to and will arrest"
complainants, and any person employing them, if at-
tempts be made to do electrical work or supervise the
installation thereof without a license or permit; and
that defendants also "threaten to and will destroy and
demolish" any electrical work done or supervised with-

out such license or permit. It will also be noticed that it is not alleged that the claimed threats were made before or at the time complainants paid the license fees, or that any fees were paid because of them.

In defendants' answer to the bill they alleged in substance that, since the decision of the Supreme Court adjudging the ordinance to be void, the city has not attempted to enforce the provisions thereof or to collect any license fees thereunder; denied that the license fees, which had been paid by complainants and are sought to be recovered back, were paid by them or any of them involuntarily, or under any compulsion save that of the provisions of the ordinance itself, or because of any threats as charged; and further alleged that, although by virtue of the ordinance complainants paid to the city the license fees, the same "in every instance were paid voluntarily and without protest"; that in every instance the licenses were issued in response to applications voluntarily made by complainants; that defendants never undertook to coerce complainants in any manner; that in every instance, where permits were applied for, inspections were made by the city at complainants' requests and urgent demands; and that portions of the fees now sought to be recovered back were in fact paid by complainants for inspections, which were made.

In Dillon on Municipal Corporations, Fifth Edition, Volume IV, section 1617, the author says that actions against a municipal corporation to recover back money upon the ground of the *illegality* of the tax or assessment are, upon principle and weight of authority (where there is no statute enlarging the liability), only maintainable when (1) the authority to levy the tax is wholly wanting or the tax itself is wholly unauthorized; (2) the money has been actually received by the municipality for its own use; and (3) "the payment by the plaintiff must have been made *upon compulsion,* as, for example, to prevent the immediate seizure of

his goods or the arrest of the person, and not volun-tarily. Unless these conditions concur, paying under protest will not, without statutory aid, give a right of recovery. The same principles are applicable to actions for the recovery back of money paid for *illegal license taxes* or fines imposed by a municipal court."

The author further says:

Sec. 1619. "Money paid by a person *to prevent an illegal seizure* of his person or property by an officer claiming authority to seize the same, or paid to *liberate his person or property from illegal detention* by such officer, may be recovered back in an action for money had and received, on the ground that the payment was compulsory, or by duress or extortion."

Sec. 1620. "The coercion or duress which will render a payment of taxes *involuntary* must in general consist of some actual or threatened exercise of power possessed, or assumed to be possessed, by the party exacting or receiving the payment, over the person or property of another, from which the latter has no other means or reasonable means of immediate relief except by making payment."

Sec. 1621. "Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an *illegal* tax, license, or fine, cannot without statutory aid—there being no coercion, no ignorance or mistake of *facts,* but only ignorance or pure mistake of the law—be recovered back from the corporation, either at law or in equity, even though such tax, license fee, or fine could not have been legally demanded and enforced."

In a comprehensive note to the section last quoted it is said:

"The doctrine of non-liability has been applied to the case of money paid under an *unconstitutional act* of the legislature and *ordinances* passed in pursuance thereof, the court adopting the principle that money

voluntarily paid under a mistake of legal right cannot be recovered back, and that *mere apprehension* of an impending distress warrant did not make the payment a compulsory one.'' (Citing *Baltimore v. Lefferman,* 4 Gill (Md.) 425; *Taylor v. Philadelphia Board of Health,* 31 Pa. St. 73.) ''Where a person, on his own motion, goes to the city clerk and pays money as a price of a license, under an ordinance *afterwards judicially declared void,* the payment is voluntary, and not upon compulsion, although the ordinance imposed a fine and imprisonment as a penalty for not obtaining a license; hence, in such cases, the money cannot be recovered back in an action against the corporation.'' (Citing *Town Council of Cahaba v. Burnett,* 34 Ala. 400; *Town of Ligonier v. Ackerman,* 46 Ind. 552.)

These principles of law, as stated in the textbook mentioned, have received the approval of our Supreme Court in numerous cases. In the case of *Illinois Glass Co. v. Chicago Tel. Co.,* 234 Ill. 535, it is said (p. 541) that ''It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal''; that (p. 545) ''The circumstances of different cases are so diverse   .   .   . that, as before stated, no very precise rules can be laid down which will fit every case''; that ''Ordinarily, protest is the best evidence of compulsion or unwillingness to pay,'' but that ''where protest would be useless it is superfluous''; and that ''Compulsion may appear from the circumstances and not from any expression of unwillingness or protest against a payment; but that has no effect on the rule that a payment which is voluntary, and not compulsory, cannot be recovered back.'' The writer of the opinion (Mr. Chief Justice Cartwright) reviews many prior decisions, among them two of the earlier cases between the City of Chicago and the own-

ers of property who had paid *illegal* special assessments, saying (p. 542):

"In *Bradford v. City of Chicago,* 25 Ill. 411, it was held that a property owner could recover an assessment for the purpose of opening a street where the assessment was void and payment was made to a collector who had a warrant in his hands authorizing him to levy upon and sell the goods and chattels of the property owner. On the other hand, in *Elston v. City of Chicago,* 40 Ill. 514, where the assessment was void but the payment was made when there was no precept or execution in the hands of an officer by which the collection of the assessment could be enforced, it was held that the payment was not compulsory. The doctrine of that case, which is adhered to by practically all courts, is that a payment made with full knowledge of all the facts and circumstances, and in ignorance only of legal rights, cannot be recovered back. In order to render a payment compulsory, such a pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, and the compulsion must furnish the motive for the payment sought to be avoided. Proof that one party is under no legal obligation to pay the money and that the other has no right to receive it is of no consequence unless the payment was compulsory, in the sense of depriving the one making the payment of the exercise of his free will."

In the majority opinion in the recent case of *School of Domestic Arts and Science v. Harding,* 331 Ill. 330, 332, the same doctrine is again enunciated. In the opinion in said *Chicago Tel. Co.* case (234 Ill. 535), the writer also reviews two other decisions of our Supreme Court, saying (p. 544):

"In *City of Chicago v. Northwestern Mutual Life Ins. Co.,* 218 Ill. 40, an owner of property was adjudged to have rightfully recovered from the city of Chicago water rates unlawfully exacted and paid under protest

to prevent the city from carrying out a threat to shut off the water supply. The payment was deemed compulsory. In *Yates v. Royal Ins. Co.*, 200 Ill. 202, it was held that although a statute imposing a tax was unconstitutional and the tax illegal, it could not be recovered back if it was paid voluntarily. It was considered of no importance that the tax was illegal where it was paid under a mistake as to legal rights but with knowledge of all the facts."

In the present case it does not appear from the allegations of *facts* in the bill, which under the stipulation were to "be treated as proved" in case the court found in favor of complainants, that any of the payments of fees sought to be recovered back were made under compulsion or duress, pertaining to the person or property of any of the complainants, or that any of the payments were made because of threats by the officers of the city that in case of nonpayment any of the penalties of the ordinance would be exacted. And, the sole question for us to decide is, as stated by complainants' counsel upon the hearing, whether the *mere existence* of such an ordinance as the one in question, and the making of the payments under it as stipulated, was "tantamount to duress," entitling complainants to recover back said payments from the city.

We are not aware of any decision of the Supreme Court of this State passing upon the question under any similar void ordinance, where payments of license fees were received in the belief of the validity of the ordinance and the payors of such fees subsequently sought to recover them back. But, in view of the legal principles relating to voluntary or involuntary payments, as above set forth, the decisions above mentioned, the stipulation and the facts of the present case, we are of the opinion that complainants are not entitled to recover back any of the moneys paid to the city for license fees under the ordinance, that complainants' amended bill is without equity, and that the court

erred in entering the decree appealed from. Reference may be made to the following additional cases as sustaining these holdings: *Michel Brewing Co. v. State,* 19 S. D. 302; *Virginia Brewing Co. v. Commonwealth,* 113 Va. 145; *Wolff v. City of New York,* 92 App. Div. 449, 87 N. Y. Supp. 214, aff'd 179 N. Y. 580; *United States v. New York & Cuba Mail S. S. Co.,* 200 U. S. 488; *Union Pac. R. Co. v. Board of Com'rs of Dodge Co.,* 98 U. S. 541; *Chesebrough v. United States,* 192 U. S. 253. During the oral argument had in this court in the present case complainants' counsel cited the case of *Chicago & E. I. R. Co. v. Miller,* 309 Ill. 257, as supporting his sole contention. We do not think that it does. It appears from the opinion in that case (p. 259) that the money, deposited as a fee and sought to be recovered back, was deposited with the State treasurer, as trustee, under protest and under an agreement that said treasurer "should hold the money as trustee pending the determination of the right of the State to demand and collect this fee."

The decree of the circuit court of January 13, 1928, is reversed and the cause is remanded with directions that complainants' amended bill, as amended, be dismissed for want of equity.

*Reversed and remanded with directions.*

SCANLAN AND BARNES, JJ., concur.