(No. 20616.—

THE CITY OF CHICAGO, Defendant in Error, *vs.* ARBUCKLE BROS., Plaintiff in Error.

*Opinion filed June 18, 1931.*

THOMAS J. HICKEY, for plaintiff in error.

SAMUEL A. ETTELSON, Corporation counsel, (LEON HORNSTEIN, and MARTIN H. FOSS, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Arbuckle Bros., a ·corporation, was convicted in the municipal court of Chicago of conducting a wholesale food establishment without a license, in violation of section 2004 of the Chicago municipal code. The validity of a municipal ordinance was involved and a writ of error was sued out of this court, the trial judge having made the statutory certificate required for that purpose.

The sole question argued is the validity of section 2004 of the Chicago municipal code, which, so far as material in

this case, is: "The term 'wholesale food establishment,' as used in this article, shall be construed to mean any building, room, stand, enclosure, premises, place or establishment used for the preparation, manufacture, canning, bottling, packing, distribution, selling or offering or keeping for sale at wholesale, any article of food, confection, condiment or drink used or intended for human consumption, or any such article which is an ingredient of or is used for or is mixed with or enters into the composition of any such food, confection, condiment or drink. * * * No person, firm or corporation shall establish, maintain or operate any wholesale food establishment without first having obtained a license as hereinafter required." Section 2009 is as follows:

"Sec. 2009. (*Sanitary requirements.*) It shall be the duty of every person, firm or corporation conducting, operating or maintaining a wholesale food establishment to keep the floors, walls, pillars, partitions, ceiling, receptacles, refrigerators, implements and machinery of every such establishment, and all cars, trucks, vehicles and containers used for the transportation of food products, in a clean and sanitary condition. For the purposes of the enforcement of this article, unclean and insanitary conditions shall be deemed to exist if the food in the process of production, preparation, manufacture, packing, storing, sale, distribution or transportation is not adequately protected from flies, vermin, dogs, cats, dust, dirt and from other foreign or injurious contamination; or if refuse, dirt, or waste products subject to decomposition and fermentation are not removed daily; or if the trucks, trays, boxes, buckets or other receptacles, or the chutes, platforms, racks, tables or shelves, or the knives, saws, cleavers, or other utensils, or the machinery used in handling, cutting, chopping, mixing, canning or other processes, are not clean, or if the clothing of operatives or other persons employed therein is unclean, or if no adequate toilet facilities, soap or clean towels are provided for employees handling foods."

The plaintiff in error is engaged in the business of receiving, packing and selling at wholesale, coffees, teas, spices and flavoring extracts. The coffee is received in bulk and is then roasted and ground and packed in containers by machinery. Most of the teas are kept and sold in their original containers, though some teas are picked over and re-packed. All spices are handled automatically, without the intervention of human hands, except that an original package of allspice will be broken when someone wants a smaller quantity, and whole spices are handled occasionally. The flavoring extracts are also manufactured without the intervention of human hands. The products of the plaintiff in error are distributed in all the States east of the Rocky Mountains. The business of the plaintiff in error subjects it to the provisions of the act "to prevent the preparation, manufacture, packing, storing, or distributing of food intended for sale, or sale of food, under insanitary, unhealthful or unclean conditions or surroundings, to create a sanitary inspection, to declare that such conditions shall constitute a nuisance, and to provide for the enforcement thereof," approved June 5, 1911. (Laws of 1911, p. 528.)

A municipal corporation has no power to legislate upon any subject except by the express provision of a statute giving it the power, or by clear implication from such a statute as necessarily incident to the powers expressly granted. Section 1 of article 5 of the Cities and Villages act contains an express enumeration of the powers of the city council, and in the various paragraphs of this section must be found the authority for the passage of the ordinance in question. This authority for the passage of the ordinance need not necessarily be derived from a single one of the enumerated powers—it may be derived from several. *Arms* v. *City of Chicago,* 314 Ill. 316; *City of Rockford* v. *Nolan,* 316 id. 60.

The defendant in error relies upon paragraphs 4, 50, 53, 66, 78 and 102 of section 1 of article 5 as authority

for the adoption of this ordinance. Paragraph 4 declares only the power of the council to fix the amount, terms and manner of issuing and revoking licenses, confers no authority to issue a license for any purpose, but only declares that the council may fix the amount, terms and manner of issuing licenses in all cases in which it has been expressly authorized to issue a license. (*Arms* v. *City of Chicago, supra.*) Paragraph 102, which gives the power to pass ordinances and make rules and regulations to carry into effect the powers granted to cities and is limited by its terms to carrying into effect the powers granted, presupposes a grant of authority with reference to the particular subject or occupation and merely authorizes the passage of ordinances and the making of rules and regulations to make such authority effective. Paragraph 66 is of a similar character and does not delegate the entire police power of the State to the municipality but limits its exercise to the making of the powers expressly granted effective. (*Arms* v. *City of Chicago, supra; City of Rockford* v. *Nolan, supra.*) Paragraphs 50, 53 and 78 are as follows:

50. "To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same and to control the location thereof."

53. "To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, tobacco, flour, meal and other provisions."

78. "To do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease."

Under the provisions of paragraphs 50 and 53 the city council is authorized to regulate the sale of the articles mentioned, provide for and regulate the inspection of them and the place and manner of selling them, and to control the location of the places for their sale. Paragraph 53 contains, among the articles specifically mentioned, cotton, to-

bacco, flour and meal, which are not specifically mentioned in paragraph 50, but both paragraphs include "and other provisions." Webster's definition of "provision" includes: "4. Specif. a store or stock of needed materials prepared beforehand; esp. a stock of food; hence any kind of eatables collected or stored; food; often in plural." Funk & Wagnalls: "3. Specif. a supply of food; victuals; in the grocery trade sometimes limited to farm products generally; usually in the plural." Bouvier: "Food for man; victuals." Cotton and tobacco can hardly be classified as "food," but all the other articles mentioned in these two paragraphs are food for man, and coffee, tea, spices and flavoring extracts we regard as within the meaning of "other provisions" mentioned in paragraphs 50 and 53 whose inspection and sale and the place and manner thereof the city council may regulate and provide for. The term "food" is defined in the Pure Food act as including "all articles used for food, drink, confectionery or condiment by man or other animals, whether simple, mixed or compound and any substance used as a constituent in the manufacture thereof." Coffee, tea, spices and flavoring extracts are included in the term "other provisions," and their sale and inspection and the place and manner thereof may be provided for and regulated by the city council. The power to regulate includes the power to license. *City of Chicago* v. *Drogasawacz,* 256 Ill. 34; *Kinsley* v. *City of Chicago,* 124 id. 359; *Chicago Packing Co.* v. *City of Chicago,* 88 id. 221; *Biffer* v. *City of Chicago,* 278 id. 562; *Crackerjack Co.* v. *City of Chicago,* 330 id. 320.

Under these paragraphs, 50 and 53, ordinances have been sustained regulating the production, inspection and sale of many different articles of food, some of them not specifically mentioned by name in those paragraphs. Among these are an ordinance regulating the sale of milk, requiring every glass bottle or jar in which milk is sold to have its capacity permanently indicated on the bottle or jar and fixing a penalty for using bottles or jars having a less capacity than

indicated.—*City of Chicago* v. *Bowman Dairy Co.* 234 Ill. 294. An ordinance regulating the sale and weight of bread.—*City of Chicago* v. *Schmidinger*, 243 Ill. 167. An ordinance regulating and licensing bakeries.—*City of Chicago* v. *Drogasawacz, supra.* An ordinance regulating the sale of milk, requiring its pasteurization, prescribing the conditions under which the pasteurization shall be done and how compliance with such conditions shall be secured and made to appear.—*Koy* v. *City of Chicago,* 263 Ill. 122. An ordinance licensing and regulating the business of manufacturing confections.—*Crackerjack Co.* v. *City of Chicago, supra.* An ordinance that any person who shall keep, offer or expose for sale, sell or deliver any food which shall be impure, unwholesome or adulterated or to which any harmful or injurious or foreign substance has been added, shall be fined not less than $5 nor more than $100 for each offense.—*City of Chicago* v. *Union Ice Cream Co.* 252 Ill. 311. In the case last cited it was claimed that the Pure Food law of 1907 repealed by implication the authority granted to cities to regulate the sale of impure or adulterated food, but it was held that the fact that the State had legislated on a subject did not deprive a city of the power to enact an ordinance on the same subject, provided the terms of the ordinance were not inconsistent with the laws of the State.

Under paragraphs 50, 53, 66 and 78 as construed in the decisions which have been cited, and others, the city council is authorized to regulate the sale of food in regard to the place of selling, the manner of selling and inspection, to compel the occupant of any building to keep it in a sanitary condition and conduct his business in such a manner as not to endanger the health of his employees or the public, (*City of Chicago* v. *Pettibone & Co.* 267 Ill. 573,) and for the purpose of such regulation to license the business of the sale of food and make such reasonable rules as are appropriate and necessary to assure sanitary conditions in the care

of the buildings or rooms in which the business is carried on and in the conduct of the business. The foundation of the right to regulate is found in the unclean and insanitary conditions mentioned in section 2009 of the code which may result from negligence in the processes of production, preparation, packing, sale and distribution of the articles of food and in the failure to adequately protect them from contamination or to keep the floors, walls, receptacles, containers, implements and machinery used in a clean and sanitary condition. If there is a reasonable connection between any business or occupation and danger to the public a reasonable ground for regulation is presented. Insanitary conditions in the production, keeping, handling and sale of food may result in unwholesome food and affect the health of the persons who purchase it. The probability of the existence of these conditions renders the business of the sale of food a proper one for municipal regulation, and the city council is the judge of the expediency of regulation. (*Ruban* v. *City of Chicago,* 330 Ill. 97.) Under the police power, things which are injurious to the public may be suppressed or prohibited. Other things which may or may not be injurious to the public, according to the way in which they are managed, conducted or regulated, may be licensed for the purpose of regulation. *Condon* v. *Village of Forest Park,* 278 Ill. 218.

It is argued on behalf of the plaintiff in error that if there is any question of public health connected with the distribution of the articles dealt in by it the question is very remote; that most of the operations involved in the preparation of its products are accomplished through the use of automatic machinery; and furthermore, that teas and coffees, before consumption, are prepared with boiling water in the home and spices and flavoring extracts are used sparingly in cooking. However remote the question may be, whether it exists and the degree of its importance are for the determination of the city council, and while its deter-

mination is not final, it will not be set aside if there is any reasonable relation between the action of the council and the public health. The statute does not mention "wholesale food establishments" but it does authorize the regulation of the sale of food, and the definition and use of the term in the ordinance is a proper method of indicating to what the ordinance is intended to apply. It may be that the plaintiff in error has never violated the terms of the ordinance in regard to the conditions under which its business must be conducted. It is not charged with any such violation. The sole charge against it is that it operated a wholesale food establishment without obtaining a license. The duty of obtaining a license applies equally to those who violate the terms of the ordinance and those who do not. All are required to have a license, and it is no defense to a charge of carrying on the business without having a license that the business was conducted strictly according to the terms of the ordinance.

Counsel for the plaintiff in error argues that the ordinance is a revenue measure designed to meet the general corporate expenses of the city, and it was conceded that the license fees collected were paid into the city treasury and used for general corporate purposes. In *Herb Bros.* v. *City of Alton,* 264 Ill. 628, it was held that the power given the city under paragraph 50 of section 1 of article 5 of the Cities and Villages act to regulate the sale of meats necessarily gives the power to license as one means of regulation but that the city had no power to impose such a license fee solely for the purpose of revenue, and in that case the ordinance was held void because it contained no requirement for an inspection of or regulating the sale of meats in any way. In *Kinsley* v. *City of Chicago, supra,* however, it was held that under an ordinance to regulate the sale of meats by virtue of the same authority as the ordinance in *Herb Bros.* v. *City of Alton, supra,* the fact that the license required might exceed the necessary or prob-

able expense of issuing the license and inspecting the business did not render the fee illegal or unreasonable. Upon the record in this case the license fee is not objectionable.

The judgment is affirmed. *Judgment affirmed.*