HERB BROS. *et al.* Appellants, *vs.* THE CITY OF ALTON *et al.* Appellees.

*Opinion filed October 16, 1914.*

1. MUNICIPAL CORPORATIONS—*city possesses no inherent power to license any occupation.* A city possesses no inherent power to license any occupation or to require the payment of a tax for engaging in the same, but such power must be expressly granted in its charter or be a necessary incident to the powers so granted.

2. SAME—*power to license sale of meats is incidental to regulating such sale.* The power given to cities to regulate the sale of meats necessarily confers power to license the sale of meats as a means of regulation, but such power can be exercised only in connection with other proper regulations of the business.

3. SAME—*city cannot, for purpose of revenue only, require a license for sale of meats.* A city has no power to require a license for selling fresh meats where the imposition of the license is for revenue purposes only, there being no requirements in the ordinances of the city with respect to the inspection of the meats, the wholesomeness of the meats or the sanitary condition, of the places where they are sold; nor can the ordinance requiring such license be sustained as a health measure. (*Kinsley* v. *City of Chicago,* 124 Ill. 359, distinguished.)

APPEAL from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding.

WARNOCK, WILLIAMSON & BURROUGHS, (W. P. BOYNTON, of counsel,) for appellants.

JOHN J. BRENHOLT, City Attorney, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Herb Bros. and eighteen other meat dealers of the city of Alton filed their bill of complaint in the circuit court of Madison county to enjoin the city of Alton, and the city attorney and the police magistrate thereof, from enforcing or attempting to enforce a certain ordinance requiring dealers in certain kinds of fresh meats to pay the city of Alton a license fee of $100 per year, and providing a penalty of not less than $5 nor more than $200 for each day that business should be conducted without a license. The bill alleges that on March 31, 1909, the city council purported to pass and publish an ordinance entitled "An ordinance in revision and consolidation of the general ordinances of the city of Alton;" that said purported ordinance consisted of thirty chapters, divided into sections and paragraphs, and that one of the paragraphs was as follows: "Venders of fresh meat, excepting poultry, fish, venison and wild game, shall pay $100 per annum in advance, no license to be taken out for a less period than one year. All meats not smoked or cured shall be deemed fresh meats. This provision shall apply to all such venders, whether in shops, stands or from wagons." The bill then alleges that said ordinance never became effective or in force because it was not passed by the city council, was not recorded in the ordinance book of the city, was not approved by the mayor and no original of the ordinance was deposited with the city clerk. The constitutionality of the paragraph above quoted is attacked on the grounds that it arbitrarily discriminates between citizens of the same class engaged in the same business, that it is oppressive, unjust and unequal, is in restraint of trade, is calculated to create a monopoly, and deprives dealers in fresh meats of property without due process of law. As reasons for appealing to a court of equity it is alleged that the city has instituted suits against fifteen of the complainants before the police magistrate of

the city to collect the penalty prescribed by said ordinance
for doing business without a license, and the city authori-
ties have announced that other suits will be instituted, and
the complainants will be harassed by a multiplicity of suits
brought by the city under such pretended ordinance unless
an injunction be issued restraining the bringing and prose-
cution of such suits. Upon the filing of the bill a tempo-
rary injunction was granted. Thereafter the city filed its
answer and the cause was referred to the master to take the
evidence. A hearing before the chancellor upon the evi-
dence taken before the master resulted in the entry of a
decree dissolving the temporary injunction and dismissing
the bill for want of equity. The complainants have prose-
cuted this appeal from that decree.

The city offered in evidence an ordinance passed Feb-
ruary 9, 1897, which contained a paragraph identical with
that above quoted from the alleged ordinance of 1909.
The ordinance of 1897 did not prescribe any penalty for
doing business without obtaining a license. Whether or not
the ordinance of 1909 was properly passed is largely im-
material, as, with the exception of the penalty clause, it
was practically identical with the ordinance of 1897, and
if the purported ordinance of 1909 never became effective,
the ordinance of 1897, containing the same provision, was
then, and is now, in effect. We will therefore determine
only the question of the validity of the provision above
quoted.

Appellees rely upon clauses 50, 78 and 98 of section 1
of article 5 of the Cities and Villages act as sustaining the
validity of this provision. These clauses are as follows:

"Sec. 1. The city council in cities, and the president and
the board of trustees in villages, shall have the following
powers: * * *

"*Fiftieth*—To regulate the sale of meats, poultry, fish,
butter, cheese, lard, vegetables, and all other provisions, and
to provide for place and manner of selling the same. * * *

*"Seventy-eighth*—To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.  \* \* \*

*"Ninety-eighth*—To pass all ordinances, rules, and make all regulations, proper or necessary, to carry into effect the powers granted to cities or villages, with such fines or penalties as the city council or board of trustees shall deem proper: *Provided,* no fine or penalty shall exceed $200, and no imprisonment shall exceed six months for one offense."

It was shown that neither by the ordinance under consideration nor by any other ordinance did the city attempt in any way to regulate the sale of fresh meats, other than to provide for the payment of a license fee.  It was also shown that the city does not make any inspection or regulation with reference to the handling of fresh meats, and that the license fees collected from venders of fresh meats are not used to defray the expense of investigating or regulating their business but are appropriated by the city for other municipal purposes.

A city possesses no inherent power to license any occupation or to require the payment of a tax for the privilege of engaging in the same.  That power must be expressly granted in its charter or be a necessary incident to the powers so granted.  (*City of Chicago* v. *Drogasawacz,* 256 Ill. 34.)  The power given the city under said clause 50 for regulating the sale of meats necessarily confers also the power to license the sale of meats as one of the means of such regulation.  (*Kinsley* v. *City of Chicago,* 124 Ill. 359; *City of Chicago* v. *Drogasawacz, supra.*)  While this power to license is thus conferred, it may only be exercised in connection with other proper regulations of the business or occupation for which the license is issued.  The city has no power to impose such a license fee solely for the purpose of raising revenue.  In this case it is apparent that the sole purpose of the city of Alton in requiring the pay-

ment of a license fee was to raise revenue. It made no pretense whatever to regulate the manner in which those engaged in selling fresh meats should conduct their business. While it is true we said in *Kinsley* v. *City of Chicago, supra,* that we had not adopted the narrow rule of construction laid down in Cooley on Taxation, that in cases of this kind while a license fee may be exacted it must be only such a fee as will legitimately assist in the regulation of the business and should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers but that the fee might be in part for revenue, we have never gone to the extent of holding that such an ordinance may be passed solely for the purpose of raising revenue. The ordinance cannot be sustained upon the theory that it tends to promote health or suppress disease. The only requirement made of the vender of fresh meats is that he pay the license fee. The ordinance is silent as to the quality or wholesomeness of meats to be sold or as to the sanitary condition of the place in which the business is conducted. No provision is made for inspection. The theory upon which it has been held that the power to regulate confers the power to license in such cases is, that it is eminently proper that the business regulated should bear the expense of inspection and enforcement of regulation, and that the city authorities might have power to enforce regulation by revoking the license on the failure of the licensee to comply with the requirements imposed. In this case anyone might engage in the business of vending fresh meats by payment of the license fee, and continue such business without restriction or fear of interruption so long as he did not violate any of the general laws of the State or city. As the ordinance is purely a revenue measure and makes no attempt whatever to regulate the business of vending fresh meats it is invalid.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*