ALVIN RUBAN et al. Appellants, vs. THE CITY OF CHICAGO et al. Appellees.

*Opinion filed April 21, 1928.*

1. MUNICIPAL CORPORATIONS—*regulatory ordinance may require license.* Under the police power, things which are injurious to the public may be suppressed and prohibited and other things which may or may not be injurious to the public, according to the manner in which they are managed, conducted and regulated, may be licensed for the purpose of regulation; and the inspection of factories, places of employment and all establishments involving the health and safety of employees and the public is a proper and necessary incident to such regulation.

2. SAME—*what necessary to sustain an act or ordinance under police power.* To sustain an act or ordinance under the police power the court must be able to see that it tends in some degree to the prevention of offenses or the preservation of the public health, morals, safety or welfare, and if it is manifest that it has no such object but under the guise of a police regulation is an invasion of the property rights of the individual it is the duty of the court to declare it void.

3. SAME—*city has power to enact an ordinance regulating construction and use of laundries.* The enactment of an ordinance regulating the construction and use of laundries is authorized by clause 82 of section 1 of article 5 of the Cities and Villages act as it existed prior to the invalid amendment in 1919, and the power to require a license and the payment of a license fee as an incident to such regulation is not illegal.

4. SAME—*an ordinance regulating laundry business may define "laundry"—what properly included.* In an ordinance regulating the laundry business, the defining of a "laundry" for the purpose of the ordinance, so as to avoid uncertainty of its application and to forestall evasion of its provisions, is a proper incident to the power of regulation conferred by the statute; and such definition may include places known as "hand laundries," where no washing is done but where soiled clothes are collected, and after being taken up, washed and dried by steam laundries are returned to and ironed by the hand laundries.

5. INJUNCTION—*what question cannot be considered in suit to enjoin enforcement of ordinance—mandamus.* In a suit to enjoin the enforcement of a laundry regulation ordinance on the ground

330—7

that it is invalid as applied to the business of the complainants, the question whether the city was justified in refusing to grant the complainants licenses after they had tendered the fees required, or whether the provision of the ordinance concerning laundries in tenement houses, on which the city based its refusal, is valid, can not be considered, as complainants have an adequate remedy at law by *mandamus* to compel the issuance of the licenses. ·

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

WILLIAM E. RODRIGUEZ, (JOHN M. HUMPHREY, and HAMLIN K. BUCHMAN, of counsel,) for appellants.

FRANCIS X. BUSCH, Corporation Counsel, (LEON HORNSTEIN, of counsel,) for appellees.

Mr. COMMISSIONER CROW reported this opinion:

Complainants filed a bill in the circuit court of Cook county to restrain the city from enforcing an ordinance regulating the laundry business, in which it was alleged they were engaged. A demurrer was filed to the bill. The court sustained the demurrer and dismissed the bill for want of equity. To reverse the decree dismissing their bill they prosecute this appeal.

Substantially the bill averred complainants, and each of them, are engaged in the business of commercial laundry agencies in the city of Chicago and have occupied premises described in the bill as commercial laundry agencies; that each of them (fifteen in number) was the owner of the business known as a hand laundry, stating the name and location of each for the periods stated; that each holds possession of his premises by virtue of a written lease, the leases ranging in terms from two to five years; that each of the places of business is uniquely located and that the locations command a good patronage from the residents of the locality; that patrons and residents have displayed an appreciation for their services and efforts; that their efforts

have been highly profitable and remunerative; that the upper floor or floors of the buildings in which they conduct their respective businesses are utilized for dwelling quarters and that the floor or floors are occupied by more than one family; that the nature of their business is such that patrons leave or deposit with them soiled wearing apparel and linens; that thereafter steam laundry companies operated by persons and firms other than complainants call for and collect them; that thereafter the soiled apparel and linens are washed and dried by the steam laundries and delivered and returned to complainants; that complainants hand-iron the same, so that the nature of their business does not include the washing, mixing and drying processes incident to the usual laundry business but only the service of acting as a depository of soiled apparel and linen and ironing same; that all their places of business are and have been operated and maintained in a sanitary and wholesome manner, and that nothing in the nature of operating the same is anywise injurious to the health of the residents of the city and the sanitation of the city; that on March 10, 1920, the city enacted an ordinance respecting the location, management and control of laundries, wherein it attempted to define what places of business shall be regarded as laundries for the purpose of the act. The sections of the ordinances are:

"Sec. 2375. Any place, building, structure, room, establishment or portion thereof, which is used for the purpose of washing, drying, starching or ironing shirts, dresses, underwear, collars, cuffs, or other wearing apparel, table, bed or other household linens, towels, curtains, draperies or other washable fabrics, such work being done for the general public, shall be deemed a laundry and subject to the provisions of this chapter.

"Sec. 2376. No person, firm or corporation shall conduct, operate, maintain or carry on the business of any laundry as defined in this chapter within the city limits without first obtaining a license so to do as hereafter provided.

"Sec. 2379. Any person, firm or corporation that shall hereafter establish, maintain, conduct, carry on or operate a laundry without first procuring a license shall be fined not less than $25 nor more than $200 for each offense, and each day shall be construed as a separate offense.

"Sec. 2393. No new laundry shall hereafter be established in any tenement house situated in the city of Chicago, and if any existing laundry shall be vacated, discontinued or unused for a period of more than six consecutive months, and thereafter be re-opened, such laundry shall be considered a new laundry."

It was further averred that the city, through its department of health, has established a rule that any building containing more than one business enterprise or more than one family occupying the same shall be considered a "tenement;" that in no one of the respective establishments of complainants is any washing of soiled wearing apparel or the washing of anything else done. The conclusion that complainants draw from the latter averment is that the city cannot lawfully designate their business as laundries. They allege that they properly made application for license and remitted the license fee, but notwithstanding the application for license the city refused to grant the same on the ground that each of them was in violation of the tenement section of the ordinance. Suits have been commenced to collect the penalties prescribed. Complainants averred that they had not an adequate remedy except in an equity proceeding for injunction.

Ten errors are assigned. The second is that the court below erred in sustaining the demurrer of defendants to the bill of complaint. If the bill stated any ground for equitable relief the demurrer should have been overruled.

Because of many of the perils and unsanitary conditions of the laundry business against which the ordinance in question is directed, it cannot be consistently contended that the ordinance has no reasonable relation or tendency to the pro-

motion of health of employees and of patrons. If there is
a reasonable connection between any business or occupation
and peril of employment therein, or to the public, a reason-
able ground for regulation is presented. It is plain that
unsanitary conditions affect, or may affect, not only those
engaged in the business but those for whom the service of
laundry work, in any of its aspects, is performed. The
bill discloses that appellants do an extensive business. The
process of laundering is done to cleanse clothing, bed linens
and every other known article of like character. The dan-
ger to health and public safety renders the business a proper
one for municipal regulation. The city, in the first instance,
is the judge of the expediency of regulation. The bill avers
that there is no need for inspection or regulation of the
business of appellants, but they do not deny specifically that
any of the unsanitary conditions exist against which the
ordinance is leveled. If the several places where laundry
work is done should be inspected by persons charged with
the conservation of the health and safety of those employed
and of patrons of the places, necessity for many safeguards
might be found. At all events, having adopted means and
prescribed methods to those ends, the city has the right, and
as a correlative the duty is imposed upon it, to make, cor-
rect and enforce the regulations it has prescribed to that
end. Police regulations could always be thwarted if, when
they were sought to be enforced, they might be defeated by
saying there is no occasion for inspection or for regulation.
Inspection of factories, places of employment and all insti-
tutions involving health and safety of employees and the
public is a proper and necessary incident of regulation. Un-
der the police power things which are injurious to the pub-
lic may be suppressed and prohibited. Other things which
may or may not be injurious to the public, according to the
manner in which they are managed, conducted and regu-
lated, may be licensed for the purpose of regulation. (*Con-
don* v. *Village of Forest Park*, 278 Ill. 218.) It is for the

courts to determine what are the subjects for the exercise
of the police power and to determine whether an attempted
exercise of the power in a particular instance is reasonably
necessary to the comfort, morals, safety or welfare of the
community, and the power is restricted by those provisions
which forbid unequal laws or an arbitrary invasion of per-
sonal rights of property. To sustain an act or ordinance
under the police power the court must be able to see that it
tends in some degree to the prevention of offenses or the
preservation of the public health, morals, safety or welfare.
If it is manifest that a statute or ordinance has no such
object but under the guise of a police regulation is an in-
vasion of the property rights of the individual, it is the duty
of the court to declare it void. *Condon* v. *Village of For-
est Park, supra.*

This court held in *Moy* v. *City of Chicago,* 309 Ill.
242, and *Don* v. *City of Chicago,* 314 id. 201, that under
clauses 66 and 78 of section 1 of article 5 of the Cities and
Villages act the present ordinance, or one very similar, is
authorized and is a valid exercise of the police power vested
in cities by the legislature. In the former case it was said:
"Before an ordinance can be sustained as an exercise of the
police power it must tend in some degree toward the accom-
plishment of the object sought to be attained. If it clearly
had no reasonable relation to any of the subjects over which
municipalities are given authority of regulation and control
the ordinance would be invalid as an unauthorized invasion
of private rights. It is manifest that the laundry business
is of that character which without proper regulation may
create unsanitary and unhealthful conditions, and that by
the employment therein of persons suffering from com-
municable or contagious diseases, or by the improper mix-
ing and laundering of the soiled linens of different people,
the health of the public is seriously endangered. There
seems to be no doubt that the city had authority under par-
agraphs 66 and 78 to regulate the establishment and oper-

ation of laundries and to provide a license fee to care for the additional expense incurred by the city in properly enforcing such regulation."

Appellants contend the ordinance in question cannot be sustained by clause 82 of section 1 of article 5 of the Cities and Villages act because that clause was held unconstitutional in *People* v. *Kaul,* 302 Ill. 317. That clause before its amendment, which was held to render it void, read: "To direct the location and regulate the use and construction of garages, * * * laundries and bathing beaches within the limits of the city or village." In *Rippinger* v. *Niederst,* 317 Ill. 264, the legal effect of declaring the clause void was presented. It was held that although the clause as amended was void, the effect of the decision was not to leave the section without clause 82, but to restore it to the section as it existed before the amendment. The contention of appellees, therefore, that the city has power to direct the location and regulate the use and construction of laundries is sustained by express legislative authority of clause 82 and by the principles underlying the decisions in the *Moy case* and the *Don case.* Being a regulatory ordinance, the power to require a license, and the payment of a license fee as an incident to regulation, is not illegal. (*Aberdeen-Franklin Coal Co.* v. *City of Chicago,* 315 Ill. 99.) The *Aberdeen-Franklin case* is cited by appellants in support of their contention. The case at bar differs from it. In that case there were no regulatory provisions in the ordinance. There were no conditions or regulations to which the applicant should conform in order to obtain and keep his license other than the payment of the license fee. There was no provision for inspection or supervision. Those omissions clearly distinguish that case from this and the others construing the laundry ordinance and applying to the laundry business the power to regulate it in the interest of the health of employees and the public.

But appellants contend they are not engaged in the laundry business. The basis of the contention is that a laundry is a place where clothing and other articles are washed and ironed. Inasmuch as they only conduct, as the bill avers, the business of receiving large quantities of unwashed, unclean clothes, linens of all sorts, bed clothes and articles from a heterogenous population as agents, have the washing done by others engaged in that sort of work and returned to their places, and by that process probably sterilized and rendered innocuous, therefore they should not be subject to inspection nor required to be licensed and to pay the license fee. But without proper inspection, which it is assumed is made, when soiled clothing, table, bed and other household linens are brought to the places of appellants and left with newly-washed clothing there is no guaranty that the fresh linens and other articles may not be contaminated and infected by those not yet subjected to the cleansing process. It is apparent that many opportunities for unsanitary conditions may exist, and that affords ample reason for inspection. Inspection is a necessary adjunct to regulation. Only by that means can proper regulation be provided for. From all that appears in the record, except averments of conclusions, the necessity of inspection of appellants' places is as great as of places where the complete process of laundering is performed. Indeed, the most careful protection in the washing department may be neutralized in the places of appellants.

Appellants contend that they are not engaged in the laundry business as laundries are defined in the dictionaries. They style themselves "hand laundries." If the patron, knowing nothing of their business, knows the definition of "laundry" as defined by lexicographers, he would assume his laundry is "washed *and* ironed" at the places of appellants. But appellants tell us that is not true. That situation affords a valid reason for the ordinance definition—as a place where laundry articles are "washed *or* ironed." Under

the insistence of appellants the concern doing the washing can successfully defend against enforcement of the ordinance by averring that it does not iron, starch or smooth the washed articles. The New International Dictionary defines "launder," to "wash, as clothes; to wash, and to smooth with a flat-iron or mangle; to wash and iron; as to launder shirts." The Century Dictionary defines "launder," "to wash and iron, as clothes; do up by washing, starching and ironing; now used especially of laundry work on a large scale." There is no apparent reason under the contention of appellants why, by dividing the work into three departments—washing, starching and ironing—a laundry may not avoid inspection and supervision by municipal authorities. The law is not so impractical, so weak nor so refined in its distinctions as to permit a wholesome enactment in the interest of public safety and welfare to be evaded by such shifts or devices. The ordinance defines laundry as any place, building, structure, room, establishment, premises, or portion thereof, which is used for the purpose of marking, sorting, washing, drying, starching or ironing the classes of articles therein mentioned. For the purpose of the ordinance, to avoid uncertainty of its application and to forestall evasion of its provisions, the definition of "laundry" in the ordinance was a proper incident to the power conferred to regulate laundries.

Appellants being engaged in the laundry business, no valid reason is assigned for the relief they ask. They have stated no facts that entitle them to relief. Being engaged in the laundry business and not having paid the license fee required there is no principle that authorizes the courts to aid them. If all they say is true, if they tender the fee required by the ordinance and the city refuses to grant them licenses they have an adequate remedy at law by *mandamus* to compel the issuance of the licenses. This court will not determine the moot question whether the ordinance defining tenements is valid. Appellants have not stated facts in their

bill constituting a defense to the demands of the city, and the demurrer was properly sustained. *Don* v. *City of Chicago, supra.*

The decree of the circuit court is affirmed.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*