(No. 24493.—

THE CITY OF CHICAGO, Appellee, *vs.* THE R. & X. RESTAU-
RANT, Inc., Appellant.

*Opinion filed June 15, 1938.*

BENJAMIN E. COHEN, and SAMUEL BERKE, (MAYER GOLDBERG, of counsel,) for appellant.

BARNET HODES, Corporation Counsel, (MARTIN H. FOSS, and ALPHONSE CERZA, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is an appeal from a judgment of the municipal court of Chicago, imposing a fine upon the R. & X. Restaurant, Inc., for conducting a food-dispensing establishment in Chicago without having applied for and obtained a license, in violation of an ordinance regulating such establishments.

The ordinance charged to have been violated is article 3, sections 3013 to 3037, of chapter 61 of the Revised Chicago Code of 1931, pp. 1145 to 1153. The ordinance defines food dispensers and regulates the storage, handling and sale at retail of foods and drinks intended for human consumption. Regulations are provided as to dining rooms, kitchens, storerooms, pantries, refrigerators, plumbing, screens and employees; the manner of cleaning dishes and eating and drinking vessels; cleaning and polishing silverware, kitchenware and utensils; the protection of foods from rats, mice, vermin, insects, flies and dust; the wearing by employees

of suitable, clean and washable clothing; the disposition of refuse and garbage and keeping receptacles therefor; the making of orange drinks and their protection from contamination. Regulations are provided for counter ice-cream freezers and the manufacture and handling of ice-cream. It is admitted that the ordinance covers the entire field of regulation of the business of selling to the public at retail foods and drinks for consumption on the premises.

Counsel for the defendant contend that the city has no power to regulate the restaurant business or that of food dispensers. Counsel for the city contend that the ordinance is valid under express powers delegated by specific provisions of the Cities and Villages act.

The authority of a municipality to adopt an ordinance may be derived from a single grant or a combination of enumerated powers. (*City of Rockford* v. *Hey,* 366 Ill. 526; *City of Chicago* v. *Arbuckle Bros.* 344 id. 597; *City of Rockford* v. *Nolan,* 316 id. 60.) Among the powers granted to municipalities under section 1 of article 5 of the Cities and Villages act, (Ill. Rev. Stat. 1937, pp. 347 to 354,) are: (Par. 65.3) authority "to fix the amount, terms and manner of issuing and revoking licenses." (Par. 65.40) "To license, tax, regulate, suppress and prohibit * * * keepers of ordinaries * * * and to revoke such licenses at pleasure." (Par. 65.49) "To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same and to control the location thereof." (Par. 65.52) "To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, tobacco, flour, meal and other provisions." (Par. 65.77) "To do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease." (Par. 65.90) "To tax, license and regulate * * * ice-cream parlors, coffee houses."

The most general of the foregoing provisions are those relating to the licensing and regulation of the keepers of ordinaries, the regulation and inspection of food products "and all other provisions," and the one relating to the promotion of health and the suppression of disease. It is contended that the ordinance could not be based upon the statutory provision relating to licensing and regulating keepers of ordinaries, because while food dispensers include restaurants, ordinaries are not restaurants. The word "ordinary" has been defined to mean a place of eating where the prices are settled. (Webster's New Internat. Dict.; 6 Words and Phrases, p. 5027; *Werner* v. *Washington,* 29 Fed. Cas. 705; *Talbot* v. *Southern Seminary,* 131 Va. 576.) It is not necessary to decide whether the words "ordinary" and "restaurant" have exactly the same meaning, but they are both places where food is dispensed. The ordinance here was not designed to regulate an occupation as such, but the places where food is dispensed. It is contended that the foods or provisions specified in the paragraph relating to food products, are those of a raw or uncooked character, and that by the use of the words "other provisions" the same character of food is intended. There is nothing in any of the paragraphs mentioned which excludes from their operation the regulation of cooked foods. Markets and food establishments frequently have for sale cooked meats, poultry and fish. There is as much likelihood of contamination of cooked foods as uncooked foods, if they are not properly safeguarded, and since they come within the same designation, cooked or uncooked foods would be subject to regulation. "All other provisions" would include cooked as well as uncooked articles of food. The regulation of cooked food certainly tends to the promotion of health and assists in the suppression of disease. Regulations similar to those in the act here under consideration were contained in an ordinance applicable to wholesale food establishments, passed upon and held valid in *City of Chicago* v. *Arbuckle Bros.*

*supra.* The regulation and inspection of food products and provisions immediately to be consumed in places where food is to be dispensed is no less important than the regulation and inspection of articles of food, such as coffee, in wholesale food establishments. If there is a reasonable connection between any business and the peril of an employment therein, or to the public, a reasonable ground of regulation is presented.

We have held that if a business sought to be regulated does not tend to injure the public health, public morals or interfere with the general welfare it is not a subject for the exercise of the police power. (*Lowenthal* v. *City of Chicago,* 313 Ill. 190.) An ordinance providing for a license, without regulatory provisions of any kind is solely a revenue measure and not within the police power. (*Herb Bros.* v. *City of Alton,* 264 Ill. 628.) The following cases illustrate the conditions which may call for the exercise of the police power in matters of regulation and license. The regulation and licensing of meat markets has been upheld. (*Kinsley* v. *City of Chicago,* 124 Ill. 359.) The regulation of the sale of milk and its products has been held essential to the preservation of the public health. (*Koy* v. *City of Chicago,* 263 Ill. 122.) A municipality is authorized to provide by ordinance against the sale of impure, unwholesome and adulterated food. (*City of Chicago* v. *Union Ice Cream Manf. Co.* 252 Ill. 311.) The provisions of section 1 of article 5 of the Cities and Villages act authorize municipal corporations to regulate the sale of bread and to prescribe the weight and quality of bread in a loaf. (*City of Chicago* v. *Schmidinger,* 243 Ill. 167.) The business of manufacturing candy and confections for the wholesale or retail trade is also subject to regulation by city ordinance. (*Crackerjack Co.* v. *City of Chicago,* 330 Ill. 320.) In *Ruban* v. *City of Chicago,* 330 Ill. 97, the regulation of the laundry business by ordinance was upheld. It was there said: "Unsanitary conditions affect, or may affect, not only

those engaged in the business but those for whom the service of laundry work, in any of its aspects, is performed. * * * The process of laundering is done to cleanse clothing, bed linens and every other known article of like character. The danger to health and public safety renders the business a proper one for municipal regulation." For the reasons heretofore stated, the case of *Potson* v. *City of Chicago,* 304 Ill. 222, cited by counsel for appellant, is not controlling as to the ordinance here considered. In that case there was no indication that the ordinance was intended as a health measure. The ordinance, here, relates to the regulation of conditions surrounding the sale and handling of food and drinks. It tends to protect the public against the hazards of unsanitary places for dispensing foods and drinks. It tends to promote the health of the public and guard it against disease.

It is contended that even if it be assumed that the city had the power to adopt the ordinance, the annual license fees provided for places having various capacities for service accommodations do not bear a reasonable relation to the burdens placed upon the city because of such regulatory provisions. The power to regulate includes the power to license. (*Crackerjack Co.* v. *City of Chicago, supra; City of Chicago* v. *Arbuckle Bros. supra.*) The fee is based upon the service accommodation or seating or counter space for each individual customer. It is contended that there is no connection between the seating capacity or space occupied by a customer in a food-dispensing establishment and the difficulty or burden of inspection. This case differs from *Ward Baking Co.* v. *City of Chicago,* 340 Ill. 212, cited by the appellant. In that case there was a license fee based upon the number of vehicles engaged in the delivery of bakery goods, but there were no conditions prescribed as to the manner of maintaining and operating the vehicles, nor provision for their inspection to ascertain whether they were kept free from dust, as the ordinance provided. As

heretofore stated, the ordinance here covers the entire field of regulation of the business of selling to the public at retail, foods and drinks for consumption on the premises. The welfare of the customers served in food-dispensing establishments is the basis of the ordinance. The space occupied for that purpose has some relation to the purpose of the ordinance. Whether it is the most logical basis for determining the fee to be charged for inspection is not the province of the court to determine if there is some reasonable basis for it. When the legislative department of a city has exercised its power of regulation upon a subject within the police power, unless there is a palpably arbitrary exercise of such power, the courts will not declare the regulatory provisions void. Under the police power license fees may not be imposed wholly for the purpose of obtaining revenue, (*Herb Bros.* v. *City of Alton, supra; Ward Baking Co.* v. *City of Chicago, supra;*) but a license fee which will legitimately assist in the regulation of the business may be exacted, and it is not essential that it be confined to the exact expense of issuing a license and regulating and inspecting the business. (*City of Chicago* v. *Arbuckle Bros. supra; City of Chicago* v. *Alpert, Inc.,* 368 Ill. 282.) The ordinance is not invalid because of the classification of fees according to the space occupied by or provided for the customers to be accommodated.

It is also contended that notwithstanding the many regulatory provisions imposed upon food-dispensing establishments, the ordinance nevertheless requires the commissioner of health of the city to approve the application made for licenses; that even if the provisions of the ordinance have been complied with the health commissioner may reject an application; that there is not a sufficient definition of what constitutes a sanitary condition or fit and proper place for the conduct of the business, and that too broad a discretion is vested in the commissioner of health of the city.

Sections 3014 and 3016 of the ordinance contain certain definite requirements to be met by the applicant. He must supply any information required by the commissioner of health concerning the size and nature of the place to be used for the purpose of the business and the conditions, equipment and facilities provided. The commissioner of health must cause an inspection to be made of the premises to be occupied, the equipment contained therein, the persons to be employed, the sanitary and hygienic conditions and matters necessary to be inquired into from the standpoint of health and sanitation. The commissioner must be satisfied that the place where the business is to be conducted is in a sanitary condition and is a fit and proper place for the business, and that the provisions of the ordinance relative to the conduct of the business have been observed. Provision is made for the revocation of the license upon the recommendation of the commissioner of health, if the licensee violates a State law or municipal ordinance relating to the conduct of the business of food dispenser. Periodical inspections are provided for practically the same purpose as the initial inspection, to assure compliance with the State law and municipal ordinances upon the subjects of health and sanitation.

Under the ordinance here in question the commissioner of health must be satisfied that the provisions of the ordinance have been observed with respect to the premises of an applicant or licensee being in a sanitary condition and a fit place for the conduct of the business, but the various sections of the ordinance define the conditions which must exist to permit an applicant to receive and a licensee to retain, a license to conduct the business of a food dispenser. While there is some general language pertaining to the powers and duties of the commissioner of health, the manifest purpose of the ordinance is that the initial and periodical inspections are to be made in accordance with the ordinance, and particularly the provisions of sections 3018 to

3036, inclusive. The regulations provided in these sections are specific and in detail with respect to the place, rooms, equipment, persons, utensils and clothing of employees and for the observance of sanitary requirements to insure cleanliness. The health commissioner's duties are prescribed and are to be exercised in accordance with the definite provisions of the ordinance. He is not authorized to make regulations or exercise arbitrary power in determining whether sanitary conditions exist in a particular place and that it is one fit and proper for the conduct of the business. He may not reject an application or cause a license to be revoked for personal reasons apart from the regulations contained in the ordinance, and legislative powers have, therefore, not been delegated to him. The ordinance does not deny the appellant due process of law. (*Gundling* v. *City of Chicago*, 176 Ill. 340.) The ordinance is valid.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*