Argued February 18, reversed and remanded March 4, 1953

# SHAW *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

254 P. 2d 207

*T. Walter Gillard,* Assistant Attorney General, of Salem, argued the cause for appellant. With him on the brief were George Neuner, Attorney General, and Ray H. Lafky, Assistant Attorney General, of Salem, and Roy K. Terry and Don G. Swink, Assistant Attorneys General, of Portland.

*C. S. Emmons,* of Albany, argued the cause for respondent. On the brief were Willis, Kyle & Emmons, of Albany.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

PERRY, J.

The plaintiff filed her amended complaint in the circuit court of the state of Oregon for Linn county, which, omitting the formal parts and the prayer, reads as follows:

"I. That the defendant is a commission organized and existing under and by virtue of the Laws

of the State of Oregon and charged with the administration of the Workmen's Compensation Law of said State.

"II.   That plaintiff was employed by Agnes Effinger and A. F. Effinger in connection with the operation of a nursing and convalescent home and laundry in Lebanon, Oregon, on the 13th day of September, 1950. That plaintiff was employed to work with patients at the home and to operate power-driven machinery in connection with the laundry operation conducted in conjunction with and as a part of the operation of said nursing home.

"That the said employers then and there were operating power-driven machinery in the basement of the house in which the nursing home was being operated, said power-driven machinery being used to launder bedding and clothing of the patients in the convalescent home, which said home was then and there being operated for profit by the said employers, a part of the service being furnished by the employers in return for fees paid for the care of patients being laundry service which was furnished by the use of power-driven washing machines, dryers and mangles, and that plaintiff as a part of her duties as an employee of the employers operated said power-driven machinery.

"That the laundry operation being conducted by the employers and the power-driven machinery being operated by plaintiff as a part of her employment consisted of the following: The employers maintained and operated a power-driven washing machine and mangle, which said machines were not commercial size or type but were regular household type and size machines, the same as the average housewife uses in the home, said machines being operated by small electric motors and controlled by home type electric switches.

"III.   That on or about September 13, 1950, the plaintiff with another nurse was putting an irrational elderly woman into bed after giving her a

bath, and this patient in a delirium of frenzy swung the plaintiff around throwing her against the foot of the bed and injuring her back and the lumbar region thereof.

"IV. That the plaintiff had previously injured her back working at this same job but had recovered from the previous injury sufficiently to return to work, and that the injury of September 13, 1950, superimposed upon the previous injury caused by plaintiff to suffer severe pain and discomfort in the lumbar region of her back to such an extent that she was rendered temporarily and totally disabled, and that this temporary total disability began on September 13, 1950, and continued until on or about June 1, 1951, at which time the plaintiff was able to return to employment, but that the plaintiff still has pain and discomfort in her lower back and will be required to wear a brace. That she has restriction of motion and does have and sustain a permanent partial disability in her lower back as the proximate result of said injury equal to 100 per cent loss of use of an arm.

"V. That the plaintiff is a married woman living with her husband who is not an invalid, and has three children under the age of 18 years dependent upon her for support, and at the time of her injury was earning $110.00 per month, working six days per week.

"VI. That plaintiff within 90 days of September 13, 1950, filed a claim for compensation with the defendant, which said claim was denied by order of the defendant dated January 17, 1951. That thereafter and within 60 days plaintiff filed a petition for rehearing setting forth substantially the same facts as are herein alleged, which said petition for rehearing was denied by order dated May 18, 1951.

"VII. That the orders of the defendant denying plaintiff's claim and her petition for rehearing are erroneous and should be set aside because the plain-

tiff does have and sustain the disability above alleged and was injured in the course of her employment in the occupation as hereinabove described.

"VIII. That plaintiff and her attorneys have agreed that the Court may fix an attorney's fee to be paid out of any compensation that may be awarded plaintiff by this appeal."

To the amended complaint the defendant demurred, and, omitting the formal parts thereof, the demurrer reads as follows:

"Comes now the defendant and demurs to plaintiff's amended complaint on the ground and for the reason that said complaint does not state facts sufficient to constitute a cause of action.

"In presenting this demurrer, defendant will urge that the allegations in said amended complaint which refer to the operation of a laundry on the premises in which plaintiff was employed at the time of her alleged accident, did not in fact constitute the employers' business of operating a rest home, as a hazardous occupation. In other words, the plaintiff's employers were not operating a laundry within the provisions of Section 102-1725, subparagraph (a), and therefore neither plaintiff nor her employers were engaged in a hazardous occupation and therefore the plaintiff was and is not entitled to compensation under the Oregon Workmen's Compensation Law."

The demurrer was overruled and the defendant declined to further plead. A judgment was entered for the plaintiff and, from this judgment, the defendant appeals. Error is assigned in the refusal of the court to sustain defendant's demurrer to the plaintiff's amended complaint.

The contention of the defendant is that the laundry operated upon the premises of the nursing and con-

valescent home is not such a laundry as is contemplated by § 102-1725, OCLA. Nor is it a workshop as contained in the same act and defined in § 102-1702, OCLA.

■■ This court has never been called upon to define a laundry, either in connection with the Workmen's Compensation Act, or otherwise. A generally accepted definition of a "laundry" is a place where clothes are washed. *Commonwealth v. Pearl Laundry Co.*, 105 Ky 259, 49 SW 26, 28. However, the Workmen's Compensation Act, in defining hazardous employments, is defining a commercial operation, and, as used in connection with the act, means a place to which the public is invited to deliver its soiled clothes for washing, drying, starching and ironing. *State v. Wah Lee*, 49 RI 491, 144 A 159; *Ruban v. City of Chicago*, 330 Ill 97, 161 NE 133; *Campbell Cleaning & Dye Works v. Porter*, Tex Civ App, 183 SW2d 253, 255.

■ Certainly it was not the intention of the legislature to include all places where a laundry is operated for private purposes as an adjunct to a main business.

We conclude that plaintiff's employment did not come within the purview of the act relating to a laundry.

The remaining question is whether or not the plaintiff was employed in a workshop. Section 102-1702, OCLA, defines a workshop as follows:

" 'Workshop' means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale or otherwise any article or part of any article, machine or

thing, over which plant, yard, premises, room or place the employer of the person working therein has control.''

The plaintiff does not attempt to set out her contention as to what part or portion of this definition applies to the employment of the plaintiff, nor what part or portion of the definition applies to an employer operating a convalescent and rest home.

However, since the plaintiff cites the case of *Jennings v. State Industrial Accident Commission,* 190 Or 557, 560, 227 P2d 829, wherein the word ''adapt'' is used as meaning to ''change, adjust, alter, make fit, make suitable,'' and in which we said that we agreed that that was the usual conception of the word, it is presumed that this is the portion of the definition of a workshop to which the parties to this suit are referring. Certainly no other word of action in the definition could be considered appropriate.

■ The mere laundering of an article from time to time, so that the same may be used again and again, does not come within the confines of the definition above set out. An article which is merely being washed is in its intrinsic self not being changed, adjusted, or altered, made to fit, or made suitable.

■ While the individuals who labor therein may consider a nursing and convalescent home a workshop, we are convinced that a workshop, in the intention of the legislature, is a place where the ''making, altering, repairing, printing or ornamenting, finishing or adapting'' is of inanimate and perhaps some animate objects, but not human beings. Nor did the legislature intend that, as for illustration, every place, where there is an ice box, fan, washing machine, Mix-Master, or other articles of a similar nature, operated by an electric

motor, be considered a workshop within the design of the statute.

We therefore conclude that the plaintiff's cause of action is not within the purview of the Workmen's Compensation Act, and the demurrer to the complaint should have been sustained.

The cause is reversed and remanded, with instructions to set aside the judgment of the plaintiff and to sustain the defendant's demurrer to the plaintiff's complaint.