City of Chicago, Appellant, v. The Great Atlantic and
Pacific Tea Company, Appellee.

Gen. No. 38,361.

Opinion filed November 12, 1935. Rehearing denied November 26, 1935.

WILLIAM H. SEXTON, Corporation Counsel, for appellant; MARTIN H. FOSS and ROY D. KEEHN, JR., of counsel.

JOHN L. MCINERNEY, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The City of Chicago filed a *quasi* criminal complaint against the defendant, charging that it carried on a wholesale food business at 445 West Pershing Road, Chicago, without having obtained a license to do so, in violation of sec. 3144 of the Revised Chicago Code of 1931. The case was tried before the court without a jury on an agreed statement of facts. The court found in favor of the defendant, judgment was entered on the finding, and plaintiff appeals.

The record discloses that defendant is a corporation doing business in Chicago where it operates approximately 600 chain stores in which it sells food at retail. These retail stores have complied with the city's retail food establishment ordinance. Defendant also maintains two large establishments in Chicago, one of which is involved in this suit. This consists of a five-story building which covers approximately one-fourth of a city block. There are switch track facilities by means of which merchandise is received and shipped. The defendant uses the premises for the preparation of articles of food and provisions; the handling of stock; the warehousing of it as a central point of distribution to its chain stores in Chicago and Illinois, Wisconsin and Iowa. On October 9, 1934, an inspector of the License Bureau of the city visited the premises and found the building almost completely filled with groceries; there were approximately 210 employees; 12 gas coffee roasters were being operated in the roasting of coffee; after the roasting process the coffee was put into cans, then into large cartons and stored in rooms

awaiting outgoing orders; there was also in operation a bacon-slicing department where 25 or 30 girls were employed slicing bacon and packing it into cartons to be stored and shipped; a refrigerator was kept on the premises in which perishable foods were contained, including bacon, butter, lard and other perishable commodities; there was an egg-candling process in which 20 girls were engaged in candling and packing eggs; about 200 cases of eggs were handled daily; about 50 employees were engaged in packing and shipping food in the packing and shipping rooms on the first floor. The balance of the building was used for the storing and handling of articles of food in cans, cases, tubs, cartons, etc. The method used in distributing the food was that one of the stores would make a requisition on the main plant which filled and sent the goods to the chain store, and the method of keeping accounts between the chain stores and the central plant is noted. It is admitted that the establishment in question was not licensed by the City of Chicago.

The defendant's position is that the ordinance in question does not apply to it so far as the operation of the food establishment in question is concerned, but that if it be held to apply, certain provisions of the ordinance are arbitrary, unreasonable, and therefore invalid.

An appeal was taken direct to the Supreme Court, the trial judge certifying that the validity of a municipal ordinance was involved and that public interest required the appeal to be taken direct to the Supreme Court. The Supreme Court, however, transferred the case to this court.

Counsel for both parties say that the validity of this ordinance was upheld by the Supreme Court in *City of Chicago v. Arbuckle Bros.*, 344 Ill. 597. But counsel for defendant says that the matters considered in that case are not the same as the contentions now made by the defendant in the instant case.

The pertinent provisions of the ordinance in question are as follows: "3144. Wholesale food establishments defined—license required.) The term 'wholesale food establishment' as used in this article, shall be construed to mean any building, room, stand, enclosure, premises, place or establishment used for the preparation, manufacture, canning, bottling, packing, distribution, selling or offering or keeping for sale at wholesale, any article of food, confection, condiment or drink used or intended for human consumption, . . .

"The term 'wholesale' as used in this article shall be construed to mean the making of sales to the wholesale and retail trade, including such sales by brokers, jobbers, manufacturers' agents and itinerant vendors, and shall also include . . . the supplying of branch or chain establishments from a central depot or store.

"No person, firm or corporation shall establish, maintain or operate any wholesale food establishment without first having obtained a license."

By sec. 3149 of the ordinance it is provided that every person, firm or corporation conducting, operating or maintaining a wholesale food establishment shall keep the premises and the food in the process of production, preparation, sale and distribution in a clean and sanitary condition.

Sec. 3150 provides for a penalty for the violation of the ordinance.

The authority for a municipal corporation to pass ordinances must be found in a statute giving it such power by express provision or by clear implication. *City of Chicago v. Arbuckle Bros.*, 344 Ill. 597.

The sources of power upon which the ordinance in question rests are found in secs. 50, 53, 66 and 78 of Article V. of the Cities and Villages Act.

By sec. 1 of Article V of the Cities and Villages Act, city councils in cities, and the president and board of

trustees of villages are given powers therein enumerated.

By sec. 50 of the article, power is given to city councils to regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and other provisions and to provide for place and manner of selling them and to control the location thereof.

Sec. 53 provides that councils may regulate the inspection of meats, etc.; and by sec. 66 authority is given to enforce all necessary police ordinances. Sec. 78 provides that city councils may do any act, "make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease."

Counsel for defendant says that these sections "relate solely to the regulation of the sale of food stuffs and the manner and place of selling the same." We think this contention cannot be sustained.

In the *Arbuckle Bros.* case, where this same ordinance was under consideration, and where the court considered the sections of Article V which we are now considering, it was said that these sections authorized the city councils to regulate the sale of food and to regulate the inspection of the food to compel the person or corporation to conduct his business in a sanitary condition so as not to injure the health of its employees or of the public. The court there said (p. 604): "The foundation of the right to regulate is found in the unclean and insanitary conditions mentioned in section 2009 [now sec. 3149] of the code which may result from negligence in the processes of production, preparation, packing, sale and distribution of the articles of food and in the failure to adequately protect them from contamination."

Sec. 3144 of the ordinance which we have above quoted, defines the term "wholesale food establishment" to mean any building, place or establishment

used for the "preparation, manufacture, canning, bottling, packing, distribution, selling or offering or keeping for sale at wholesale" any article of food intended for human consumption. It will be noticed that the ordinance is not limited to the selling of foods for human consumption but it also provides for the preparation, packing and distribution of such foods for human consumption. This part of the ordinance would be sufficient to render it applicable to the instant case because the facts disclose that the defendant had a number of people engaged at this plant in question in roasting coffee, in slicing bacon, in maintaining a refrigerator in which perishable food products were contained, and in candling eggs—all of which obviously was intended for human consumption. But the ordinance goes farther and specifically provides that it shall be applicable to the "supplying of branch or chain establishments from a central depot or store." This provision is expressly applicable to the facts in the instant case and we think the city council was authorized to pass this ordinance by virtue of sec. 78 of Article V above quoted. That section provides that city councils may make all regulations deemed expedient "for the promotion of health or the suppression of disease."

We think it cannot be said that the ordinance is invalid because the retail chain stores operated by defendant are required to take out licenses, for it might well be that inspection would also be required of the foods in their preparation at the central plant. In fact this was the holding of our Supreme Court in the *Arbuckle Bros.* case. The only distinction between that case and the case at bar is that in that case Arbuckle Bros. were selling at wholesale, while in the instant case defendant is distributing food products from its central plant to its chain stores. In *City of Chicago v. Clark,* 359 Ill. 374, the court said (p. 376):

"Where the legislature has committed to municipalities the power to legislate upon a certain subject matter, the councils of such municipalities have full authority to pass ordinances pertinent to such subject matter, restrained only by the condition that such ordinance must be reasonable." In the instant case we think it cannot be said that the ordinance in question was unreasonable.

The judgment of the municipal court of Chicago is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.